44   473
73a   81

44   473
180   579

# E. WESLEY MYATT

## *v.*

# MURPHY MYATT, Administratrix, etc., *et al.*

1. EVIDENCE — *proof of former marriage — what insufficient to establish.* In a proceeding to revoke letters of administration which had issued to the widow of M. deceased, upon the ground, that, at the time of her intermarriage with deceased, she had another husband, one W., then living,— *held,* that the proof of such former marriage, consisting simply of general report to that effect, and of the fact of cohabitation together as husband and wife, with one or more children born to them, is not sufficient to establish it.

2. MARRIAGE — *presumption that parties living together are married — may be rebutted.* While the presumption of law is always in favor of a marriage between parties cohabiting together as man and wife, yet such presumption may be rebutted.

3. EVIDENCE — *admissions — when insufficient to prove marriage.* Nor, in such case, will proof of her admissions that she was married to such other person, coupled with the fact of cohabitation as man and wife, establish such former marriage.

4. MARRIAGE — *issue of a void marriage, have no right to administer on the estate of the deceased parent.* And in such case, if the marriage with deceased were void, the issue are illegitimate, and do not stand in a position to apply for a revocation of the letters of administration, they having no right to administer upon the estate.

5. SAME — *legality of — should not be determined in a collateral proceeding.* The legality of the marriage ought not to be determined in a collateral proceeding to revoke letters of administration granted to the widow; other proceedings should be instituted, whereby the whole merits of the case can be fully investigated.

WRIT OF ERROR to the Circuit Court of Bond county; the Hon. J. GILLESPIE, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. H. K. S. O'MELVENY, for the plaintiff in error.

Mr. S. P. MOORE, for the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court: ˙

This was an application to the County Court of Bond county, to revoke certain letters of administration, which had been granted by that court to Mrs. Murphy Myatt and Williamson Plant, on the estate of Alexander Myatt, deceased. The court decided against the application, and an appeal was taken to the Circuit Court with the same result, that court finding that Murphy Myatt was the widow of Alexander Myatt, deceased. The application to revoke the letters was made by one E. Wesley Myatt, who states, in his affidavit in support of the application, that Murphy, when she married Alexander Myatt, had a husband named William Wilmarth then living, and that her subsequent marriage with Alexander Myatt was, for that reason, void. Affiant states that the children of Myatt are entitled to the administration, and that he is one, and that Williamson Plant is not one of the next of kin to the deceased intestate.

The proof shows that William Wilmarth and Murphy Sugg, now Murphy Myatt, lived together as man and wife and had two children born to them, and that she said she was married to Wilmarth, though it is not proved he ever said so; but, on the contrary, it was proved, without objection, by appellant, that Wilmarth admitted, when he was living with Murphy, he had a wife living in East Tennessee and a son by her. Wilmarth and Murphy Sugg lived together from about 1827 to about 1829, one or two years; when he went off and came back, and then left to get his boy. In 1832 Murphy, under her maiden name of Murphy Sugg, was regularly married by a license duly issued to Alexander Myatt, and has a family of six children by him, most of them grown.

The proof of her marriage with Wilmarth is that of general report, and of their cohabiting together as man and wife and having one or more children born to them. The presumptions of law, undoubtedly, are always in favor of a marriage between parties who are living together as husband and wife, but it is only a presumption and may be rebutted.

At the time of their cohabitation, the statute on the subject of marriage was substantially the same as it is now, and

required a license from the clerk of the County Court, who was to keep a record of the issuing of it, and make a registry of it, with the return of the magistrate or minister of the gospel before whom the marriage was declared, in a book to be kept for that purpose. Publication in church was allowed instead of a license, but not one marriage, so far as our knowledge or information extends, took place in that mode, at that early day, in any Protestant church in this State.

It appears from the record, that an attempt was made by search, to produce the license under which Wilmarth and Murphy Sugg were married, but it was fruitless. This fact, and the fact that she did, as Murphy Sugg, in 1832, soon after Wilmarth left her, obtain a regular license from the proper authority, to be joined in marriage with Alexander Myatt, which, if she had a lawful husband living at the time, would have subjected her to a prosecution for bigamy, to be followed by confinement in the penitentiary, and to a fine of one thousand dollars, goes far to show that she and Wilmarth were not really married, but were living in a state of concubinage, she knowing at the time that Wilmarth had a wife living.

It is difficult to believe, though bigamists are not in this age of the world rare,—in the purer days of the republic, five and thirty years ago, they were,—that she would have incurred such peril, the proof to convict her being so attainable. It is more rational to suppose Wilmarth had communicated the fact to her that he had a wife living, and, when the final separation took place, she was free to enter into the engagement she did with Alexander Myatt, deceased. This view of the case saves a large and respectable family from the odium of bastardy, and does no violence to any of the facts apparent in the case or any principle of law. If her marriage with Wilmarth could be proved by her own admission, and cohabitation established by them or from witnesses, then his repeated admissions that he had another wife living at the time, ought also to be considered. She, herself, may have believed she was the wife of Wilmarth, and it is not difficult to perceive the reasons which would induce her so to declare, but the fact of marriage is not proved, and

the presumption from cohabitation is rebutted by the facts of the case.

On the whole, we are satisfied the County Court and the Circuit Court decided properly in refusing the revocation of the letters, not only for the reasons we have given, but for the further reason, it is not shown what right the appellant here had to make the application to revoke them, when, if he is a son of Alexander Myatt, we must presume — for there is nothing to the contrary stated in his affidavit — that Murphy is his mother, and if she was not the wife of his father, Alexander, he himself, being her son, is illegitimate, and not entitled to make application for a revocation, he having no right to administer on the estate. His affidavit does not show he is a son of Alexander Myatt, deceased, by a former wife, and there is no allegation or proof that the deceased had, at any time, any other wife. The inference therefore is, that appellant is the son by Murphy Myatt. There is no proof in the record that he is next of kin, or entitled to any rights in the estate of Alexander Myatt.

We are, moreover, of the opinion that in this collateral way this marriage ought not to be declared void and a respectable family of children bastardized. Some other proceeding should be instituted for such purpose, wherein the whole merits could be fully investigated.

We perceive no grounds of error in the record sufficient to reverse the judgment, and accordingly affirm the same.

*Judgment affirmed.*