HENRY JONES *vs.* SARAH JONES, Administratrix of ROBERT JONES, and others.

*When presumption of Marriage founded simply upon habit and repute, is overthrown—When alleged Marriage must be established as an actual fact by direct proof—When a legal Marriage will be presumed—Presumption of Marriage from general repute and habit, may be overcome by counter evidence or counter presumption.*

If a marriage in fact between A. and B. during the life-time of C. be proved, all mere presumption of a previous marriage of A. with C. founded simply upon habit and repute, is at once overthrown, and it becomes incumbent upon the party alleging such previous marriage, to establish it as an actual fact, by more direct proof.

The general doctrine is, that if parties live together ostensibly as man and wife, demeaning themselves towards each other as such, and especially if they are received into society, and treated by their friends and relations as having and being entitled to that status, the law will, in favor of morality and decency, presume that they have been legally married. But as in such cases a legal marriage is only presumed from general repute and habit, that presumption has its limits, and may be overcome in particular cases by counter evidence or counter presumption.

Where the presumption of a lawful marriage founded simply upon habit and repute is met by the counter presumption of innocence, the former must give way, and the law then requires that the first alleged marriage as an actual fact shall be established by more direct proof.

APPEAL from the Superior Court of Baltimore City.

This case was before this Court on a previous occasion, (45 *Md.*, 144,) and having been remanded for a new trial, was again tried, the issues being the same.

*Exception.*—The plaintiff offered the two following prayers:

1. That though the jury may find from the evidence that Andrew D. Jones was married in November, 1851, to Frances Moore, yet if they shall find that said Henry Jones is the son of said Andrew D. Jones, and of the woman, Henrietta, mentioned in the evidence, and was born in 1820, or thereabouts, and that from the year 1819, or 1820, up to the year 1832, said Andrew D. Jones cohabited with the said Henrietta as his wife, and that the said Henrietta during said time assumed and bore the surname of said Andrew D. Jones, and was addressed by him by that name, and that during said time said Andrew D. Jones and said Henrietta treated each other as husband and wife, and held themselves out as such, and represented themselves as such, and treated the plaintiff, Henry, as their son, and were reputed as man and wife by their friends and acquaintances, and went to and came from church together, accompanied frequently by the said Henry Jones, then from these facts the jury may infer that said Andrew and Henrietta were married prior to the time of the birth of said Henry Jones, the plaintiff, provided the jury shall find that no marriage existed between said Andrew D. Jones, and any other woman than said Henrietta, until after the year 1832.

2. That though the jury shall find from the evidence that Andrew D. Jones was married to Frances Moore by ceremonial in November, 1851, under the license mentioned in the evidence, yet there is evidence in the case from which the jury may or may not find that there was a previous marriage between Andrew D. Jones and the woman, Henrietta, and from which they may or may not find that Henry Jones is the lawful issue of said Andrew D. Jones.

The defendants offered nine prayers, the fourth and fifth of which were withdrawn:

1. If the jury shall find from the evidence, that said Andrew D. Jones and Frances Moore were married in fact,

by ceremonial, under the license issued, as shown by the License Record Book, given in evidence, in the year 1851, and that said *Henny Atkins* was then living, and that she died in 1866, leaving said Frances surviving, then all presumptions of any marriage between said Andrew and *Henny*, founded simply on habit and repute, are overthrown and destroyed, even though the jury should find there was such habit and repute; and that in such case to establish any such marriage between said Andrew and said Henny as is alleged, it is incumbent upon said Henry to establish the same as an actual fact by direct proof; and that if the jury do find such marriage between said Andrew and Frances, then nothing short of direct proof of an actual marriage between him and said Henny, prior to his marriage with said Frances, will avail said Henry, and that all presumptions founded on habit and repute, are by the jury in such case not to be considered.

2. That if the jury shall find from the evidence, that said Andrew D. Jones was married to Anne Smith, on or about 14th February, 1819, by ceremonial, and thereafter lived with her as his wife until she died, in the year 1844, and that he subsequently, to wit: in the year 1851, married Frances Moore, by ceremonial, as set forth in the first prayer, and that said Frances survives said Andrew, and said Henny, then habit and repute will not suffice to establish any marriage between said Andrew and said Henny. And in such case it is incumbent upon said plaintiff, Henry, to prove a marriage in fact between said Andrew and said Henny, either prior to his said marriage with Anne Smith in 1819, or a marriage in fact between them during the interval between the death of said Anne, and his said marriage with said Frances; and of this there is no evidence.

3. If the jury shall find from the evidence, that the original connection between Andrew D. Jones and Henny Atkins was illicit, and that plaintiff was the offspring of

such illicit connection ; and shall also find any further connection between them thereafter, then the presumption of law is, that it continued to be illicit, and in that case to establish any marriage between them, the jury must find from the evidence some change in the conduct of said Andrew and Henny, or a change in the manner of their treatment by their relations and friends, or other facts indicating they had changed their *status* before the world, and that they intended to make that lawful which was before unlawful ; and evidence of subsequent cohabitation alone is not, in such case, sufficient of itself to establish their marriage.

6. If the jury believe that Andrew D. Jones was married to Anne Smith in the life-time of Henrietta Atkins, and that said Andrew and said Anne thereafter lived together as man and wife, until the death of said Anne in the life-time of said Andrew, if the jury shall find that said Anne died in the life-time of said Andrew ; and if the jury further find that subsequently to and after an interval of several years from the death of said Anne Smith, the said Andrew intermarried with the defendant, Frances Jones, and thereafter lived with her as her husband, without being divorced or separated from her until the death of him, the said Andrew, in the life-time of said Frances, if the jury shall so find; and if the jury further find that as well at the time of the marriage of said Andrew with said Anne, as at the time of the marriage of said Andrew with said Frances, if the jury find said marriages respectively, the said Henrietta Atkins was in full life and resided in the City of Baltimore, where also the said Andrew resided, if the jury shall so find, and that said Henrietta did not depart this life until some years after the marriage of said Andrew and said Frances, if the jury find said last mentioned marriage, then the plaintiff in order to recover in this action must prove an actual marriage between said Andrew and said Henny Atkins, before

the marriage between said Andrew and said Anne, if the jury find the last named marriage, and that he, the plaintiff, is the issue of said Andrew and said Henny, or the plaintiff must prove an actual marriage between said Andrew and said Henny, occurring in the interval aforesaid, between the death of said Anne and the marriage of said Andrew and said Frances, if the jury find the said marriage of said Andrew and said Anne, and the death of said Anne and the said intervals several years, and the said marriage between said Andrew and said Frances all respectively as aforesaid, and further an acknowledgment by said Andrew that said plaintiff was his son, made by said Andrew subsequently to said marriage of said Andrew and said Henny, if the jury find the same, and that plaintiff was born prior thereto. And the jury is further instructed, that to prove an actual marriage between said Andrew and said Henrietta, if the jury find the said respectively alleged marriages between the said Andrew and the said Anne, and the said Andrew and the said Frances, in the life-time of said Henny Atkins, or either of said alleged marriages, proof that said Andrew and Henny cohabited as man and wife, or were commonly reputed to be man and wife, or held themselves out to the world, or treated each other as man and wife, is not competent evidence, *per se,* without further proof of a marriage in fact, between said Andrew and said Henny at a time when said Andrew was lawfully competent to be married to said Henny.

7. That there is evidence from which the jury may find that Andrew D. Jones and Frances Moore were married by a religious ceremony on the 11th day of November, 1851, and in the life-time of Henny Atkins; and if the jury so find, then the plaintiff cannot establish that he is the lawful son of Andrew D. Jones and Henny Atkins, unless he proves an actual marriage between said Andrew and said Henny before the intermarriage of said Andrew

and said Frances, and that he is the issue of said Andrew and said Henny.

8. If the jury find that Andrew D. Jones married Anne Smith in February, 1819, and thereafter lived and cohabited with her as his wife until the death of said Anne, if they shall find such death, and that after the death of said Anne, the said Andrew married the said Frances, and lived and cohabited with her as his wife until his death, then the marriage of said Andrew and Henrietta, as alleged, cannot, after the marriage of said Andrew and Anne, be established by cohabitation between said Andrew and Henrietta, or by repute they were married, unless the jury find such cohabitation or repute between the death of said Anne and the marriage of said Andrew and said Frances; and if the jury do not find such cohabitation and repute of said Andrew and Henrietta in the said interval, then the plaintiff ought to prove an actual marriage between said Andrew and Henrietta before the marriage of said Andrew and Anne, if the jury find the latter marriage.

9. That if the jury find that Andrew D. Jones married Anne Smith on the 14th February, 1819, and that they thereafter lived together as man and wife until the death of said Anne, if they shall find such death, and that thereafter the said Andrew married Frances Jones, and lived with her as his wife until the death of said Andrew, and shall find that the said Henry Jones, the plaintiff, was not born earlier than the year 1820, and that the said Henrietta Atkins, his alleged mother, never cohabited with said Andrew, nor bore his name commonly, nor was by repute known as the wife of said Andrew, then the plaintiff cannot recover, and the finding of the jury upon the first issue should be that the plaintiff, Henry Jones, is not the lawful son of Andrew D. Jones.

The Court, (DOBBIN, J.,) refused the plaintiff's prayers, and granted those of the defendants, the third, seventh,

eighth and ninth being conceded—the fourth and fifth were withdrawn.

The Court on its own part instructed the jury " That if they find from the evidence that Andrew D. Jones was married to Frances Moore by ceremonial, in November, 1851, under the license mentioned in the evidence, then there is no direct evidence in the case from which the jury can find that there was an actual marriage between Andrew D. Jones and the woman Henrietta, and no evidence from which they can find that the plaintiff, Henry Jones, is the lawful issue of the said Andrew D. Jones."

To the rejection of his prayers and to the instruction given by the Court on its own part, the plaintiff excepted.

The jury found by their verdict on the first issue that Henry Jones, the plaintiff, was not the lawful child of Andrew D. Jones; and on the second issue, that Andrew D. Jones did leave a widow and that Frances Jones, formerly Frances Moore, was the surviving widow of the said Andrew D. Jones.

The plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

*Bernard Carter*, for the appellant.

*Julian I. Alexander*, for the appellees.

MILLER, J., delivered the opinion of the Court.

When this case was last before this Court, it was decided that if Andrew D. Jones was *in fact* married either to Anne Smith or Frances Moore, during the life of Hennie, the mother of the appellant, Henry Jones, all mere presumption of a *previous* marriage of Andrew with Hennie, founded simply upon habit and repute is at once overthrown, and it then becomes incumbent upon the appel-

lant to establish the alleged marriage of his mother with Andrew as an actual fact. by more direct proof. 45 *Md.*, 159. The reasoning upon which this decision rests, is that in such a case the presumption of a marriage arising from cohabitation and repute is met and overcome by the stronger presumption, that a man will not incur the guilt of felony and the danger which attends it by marrying another woman during the life of one to whom he had previously been lawfully married.

The appellant's counsel has earnestly insisted that the authorities are at war with this position, and sustain the doctrine that the presumption arising from habit and repute alone may be relied on, and is sufficient to establish a lawful marriage in *all cases,* save criminal prosecutions for bigamy or adultery, and actions of *crim. con.*, which are penal in their nature. We think, however, that the ground taken in our former decision is well supported by authority, and well founded in reason. It is not strange that but few cases can be found in the books in which this precise question has arisen or been adjudicated. The decisions, however, of the Court of Queen's Bench, of Upper Canada, if correctly stated, as we presume they are, in 1 *Bishop on Mar. & Div.*, sec. 444, are directly in point and seem to have been well considered. The case of *Taylor vs. Taylor*, where two women severally claimed administration of the effects of a deceased as being his widow, was twice before the Ecclesiastical Court in England, and in the first instance the Court said there must be "strict proof" of the alleged antecedent marriage, and that "presumptions could not by law be made in favor of it," (1 *Lee*, 571, *in* 5 *Eng. Ecc. Rep.*, 454,) and in the second, "cohabitation alone, which only creates a presumption of marriage, is not sufficient to set aside an actual fact of marriage." Again in *King vs. Inhabitants of Twyning*, 2 *Barn. & Ald.*, 386, we find a very strong instance in which the presumption of innocence was held

to prevail over another presumption. The case involved simply the settlement of a pauper. A woman had been married to a soldier, who soon after left for the East Indies. Within twelve months the woman married again, and the question turned upon the validity of the second marriage, and it was sustained: BAILEY, J., said, " the facts of the case are that there is a marriage of the pauper with Francis Burns, which is *prima facie* valid, but the year before that took place she was the wife of Richard Winter, and if he was alive at the time of the second marriage, it was illegal and she was guilty of bigamy. But are we to presume that Winter was then alive? If the pauper had been indicted for bigamy, it would clearly not be sufficient. In that case Winter must have been proved to have been alive at the time of the second marriage. It is contended that his *death* ought to have been proved, but the answer is that the *presumption of law* is, that he was *not alive* when the consequence of his being so is, that *another person has committed a criminal act;* " and BEST, J., said " where these conflicting presumptions exist, I think the Sessions were warranted in presuming the death of the first husband, on the ground that they could not presume that the woman had committed bigamy." These decisions in England and Canada sustain, in our judgment, the position we have taken on this subject. In this country it must be admitted there is some conflict of decisions, and of judicial opinion ; but it cannot, we think, be said that the preponderance of authority is the other way. In *Poultney vs. Fairhaven, (Brayton's Verm. Rep.,* 185,) which was also a pauper case, the question was whether the pauper woman Asenath was the wife of John Slyter, who swore he was lawfully married to her. To invalidate this marriage, the offer was first to prove by Asenath herself, that previous to the time when it was alleged she had married Slyter she was lawfully married to one Austin, who is now alive, but this testimony was rejected. The

offer was then made to prove her marriage with Austin, by reputation and cohabitation with him as his wife, and that Austin was yet alive, but this testimony was also rejected. On appeal the point was distinctly presented by counsel that evidence of her marriage with Austin by reputation, ought to have been received, as it is admissible testimony in all cases except prosecutions for bigamy and actions of *crim. con.,* but the Court said "she being *prima facie* the wife of Slyter, it was necessary a previous *legal* marriage should be proved to show she was not his *legal* wife; cohabitation with Austin though sufficient to charge him, was not proper evidence to *disprove* her the wife of Slyter." In *Senser vs. Bower,* 1 *Penn. Rep.,* 450, which was an action of ejectment, it was said by Ch. J., Gibson, delivering the opinion of the Court, "for civil purposes, reputation and cohabitation are sufficient evidence of marriage; and there is evidently enough in the case to show that the plaintiff's father and mother were married in fact. But there is said to be the same evidence of a precedent marriage of the mother with another man, who was alive at her second marriage; and hence a supposed dilemma. But the proof being equal, the presumption is in favor of innocence, and so far is this carried in the case of conflicting presumptions, that the one in favor of innocence shall prevail. It must be admitted that this principle is not immediately applicable here, inasmuch as there is no conflicting evidence, and the facts supposed to result are consistent with each other; but it establishes that the same proof that is sufficient to raise a presumption of innocence, may be inadequate to a presumption of guilt." It may be said this is a mere *dictum,* but if so, it certainly is the *dictum* of a very eminent Judge, expressing the opinion of a very able Court, and is entitled to due weight as such. In *Clayton vs. Wardell* there was a contest over a share of a residuary estate, devised to the testator's lawful issue, and the question turned upon the legitimacy of the claimant.

When the case was before the Supreme Court, (5 *Barb.*, 214,) that Court, by EDWARDS, J., delivered a very able opinion, holding that where there is evidence of an actual marriage, and the question is as to the legitimacy of a child of such marriage, the marriage will not be rendered illegal, nor the issue of it declared illegitimate by proof of a prior marriage arising from cohabitation, reputation and the acknowledgment of the parties, and this is placed on the ground that proof of actual marriage is necessary to overcome the presumption which the law makes against crime or acts of a criminal nature. When the case came before the Court of Appeals, (4 *Coms.*, 230,) a majority of the Judges, while declining to adopt the position assumed by the Supreme Court, seem to have rested their actual decision of the case upon the ground that the proof was not sufficient to establish the first alleged marriage, even if there had been no second actual marriage; but one of them, PRATT, J., delivered a very vigorous opinion, taking the same position as that taken by the Supreme Court. This case was much relied on by the appellant's counsel as sustaining his position, but it is cited by *Mr. Bishop in sec.* 446 of his book upon *Marriage and Divorce,* as a seeming authority the other way. In the case of *Jewell vs. Jewell,* 1 *How.,* 219, the question most discussed by counsel appears to have been whether by the laws of Georgia and South Carolina, a contract made *per verba de presenti,* without cohabitation or *per verba de futuro,* and followed by consummation, amounts to a valid marriage, and equally binding as if made in *facie ecclesiæ* ; and on this question the Judges of the Supreme Court were equally divided in opinion. A contract of this character followed by cohabitation for many years, and the birth of eight children, was relied on in that case to establish the first alleged marriage, notwithstanding a subsequent ceremonial marriage duly proved while the first husband was living. It must be conceded, however, that what was said by the Court

upon the other points of the case, as to the admissibility of the acts and declarations of the parties during this long cohabitation, and that they lived together for so many years as man and wife, and treated and spoke of each other as such, to show that there had been an actual antecedent marriage between them, tends to support the contention of the appellant's counsel, that evidence of habit and repute ought to have been admitted in this case.   He has also cited for the same purpose and with equal success, the North Carolina case of *Archer vs. Haithcock*, 6 *Jones' Law Rep.*, 421, and the Kentucky case of *Donnelly vs. Donnelly*, 8 *B. Monroe*, 113 ; but both these cases are referred to by *Mr. Bishop*, in *secs.* 443 *and* 445, as at variance, as he believes, with the general English and American doctrine. One of the questions decided by the Supreme Court in the case of *Gaines vs. Relf, et al.*, 12 *How.*, 472, was that an actual ceremonial marriage could not be made void by the mere confession or declaration of one of the parties to it, that he had another wife living at the time ; and in disposing of this point the Court said :   " The great basis of human society throughout the civilized world, is founded on marriages and legitimate offspring ; and to hold that either of the parties could by a mere declaration establish the fact that a marriage was void would be an alarming doctrine."   Finally, in the more recent case of *Wyatt vs. Wyatt*, 44 *Ill.*, 473, where there was a proceeding to revoke letters of administration, which had been issued to the widow of a deceased party, on the ground that at the time of her marriage with the deceased, she had another husband living, it was held by the Court, Ch. J. Breese, delivering the opinion, that the proof of such former marriage, consisting simply of general report to that effect, and of the fact of cohabitation together as husband and wife, with one or more children born to them, is not sufficient to establish it.

We have thus at some length reviewed the authorities bearing on this question, and in view of them, and also in

view of our previous decision in *Denison vs. Denison*, 35 *Md.*, 361, as to what constitutes a legal marriage in this State, and of what we have said in *Barnum vs. Barnum*, 42 *Md.*, 295, that in ordinary cases where reputation is relied on to raise the presumption of marriage, it must be founded on general, and not divided or singular opinion, we have no hesitation in adhering to our former decision in this case.   While doing so, we accept and reaffirm the general doctrine, that if parties live together ostensibly as man and wife, demeaning themselves towards each other as such, and especially if they are received into society and treated by their friends and relations as having and being entitled to that status, the law will, in favor of morality and decency, presume that they have been legally married. But what we do decide, is that as in such cases a legal marriage is only presumed from general repute and habit, . that presumption has its limits and may be overcome in particular cases by counter-evidence or counter-presumption ; and in a case like this, where the presumption of a lawful marriage founded simply upon habit and repute is met by the counter-presumption of innocence, the former must give way, and the law then requires that the first alleged marriage as an actual fact, shall be established by more direct proof.

It therefore only remains for us to inquire whether more direct proof on this subject has been supplied in the present trial, and is to be found in the present record.   Only two additional witnesses have been produced on the part of the appellant, and they merely prove that Andrew and Hennie were considered as man and wife by Capt. Frazier and his sons, and by their acquaintances white and colored, and that Hennie called herself Andrew's wife, but never in Andrew's presence.   This is but a very slight addition to the previous evidence of general repute.   In no sense does it constitute the more direct proof which we have said the law requires, and the Superior Court was quite right in so

treating it.    All the rulings of that Court at the present trial, are in entire accord with what we have decided to be the law of the case, and they must be affirmed.

*Rulings affirmed,*
*and cause remanded.*

(Decided March 26th, 1878.)