INHABITANTS OF CAMDEN *vs.* INHABITANTS OF BELGRADE.

Knox.    Opinion May 3, 1883.

*Rules of court.    Specifications of defence.    Practice.    Evidence.    Pauper.*
*Marriage.*

Whether rule ninth of the Rules of Court adopted at the July term, 1855, ceased to be operative on the repeal of the statute requiring specifications of defence or not, it is competent for the presiding judge to order the filing of such specifications as a condition of taking off a default. When such specifications are filed, the court will not set aside a verdict as against law and evidence because the report of the evidence fails to show proof or admission of matters which it was essential for the plaintiff to establish, but which were alleged in the writ and not denied in the specifications.

Proof of the due solemnization of a marriage ceremony between two persons will not suffice, in a civil action, to exclude the ordinary circumstantial evidence of the existence of a previous marriage of one of those persons to a third person who is still living.

ON EXCEPTIONS and motion to set aside the verdict.

Assumpsit for pauper supplies furnished one William O. Kaherl *alias* Orrin S. Carle and family.

The writ was dated August 2, 1878.

The verdict was for the plaintiffs and the defendants moved to set the verdict aside as being against law and evidence and also alleged exceptions to certain rulings of the presiding justice.

The material facts are stated in the opinion.

*A. P. Gould*, for the plaintiffs, contended that the presumption of marriage will not arise from the cohabitation of a man with a woman if, during her life and without any proof of a divorce, he marries another woman, and cited: *Jones* v. *Jones*, 45 Md. 144; 20 Alb. Law J. 288.

The reasoning, upon which this principle rests, is, that the presumption of a marriage arising from cohabitation and repute is met and overcome by the stronger presumption, that a man will not incur the guilt of felony, and the danger which attends it, by marrying another woman during the life of one to whom he had

previously been lawfully married. This theory is supported by many authorities. 1 Bish. Mar. & Divorce, § § 444, 446 ; *Taylor* v. *Taylor*, 2 Lee, 274, (2 Eng. Ecc. 124 ;) *Poultney* v. *Fairhaven*, Brayton, (Vt.) 185 : *Senser* v. *Bower*, 1 Penrose & Watts (Pa.), 450 ; *Clayton* v. *Wardell*, 5 Barb. 214 ; *Myatt* v. *Myatt*, 44 Ill. 473 ; *Breakey* v. *Breakey*, 2 Up. Ca. Q. B. 349 ; *King* v. *Inhabitants of Twyning*, 2 Barn. & Ald. 386 ; *Jones* v. *Jones*, 48 Md. 391.

We find an analogy in the rule that the presumption of the genuineness of the signature of a grantor in a deed after the lapse of thirty years is repelled by proof that he had granted the same lands to another person. Gresley Eq. Ev. 124, and authorities cited. Gilbert Ev. 102 ; *Willson* v. *Betts*, 4 Denio, 201.

The case of *Clayton* v. *Wardell*, 4 Comstock, 230, is not in conflict with the principle contended for, but there are some adverse remarks in the opinion of one of the judges. The case turned upon the insufficiency of the evidence of cohabitation and repute, to prove the prior marriage, and in this, alone, the majority concurred.

*D. N. Mortland* and *J. H. Potter*, for the defendants, cited : *Taylor* v. *Robinson*, 29 Maine, 323 ; *Bowdoinham* v. *Phipsburg*, 63 Maine, 497 ; *Hutchins* v. *Kimmell*, 31 Mich. 126 ; *Case* v. *Case*, 17 Cal. 598 ; 1 Bishop Mar. & Divorce, 434, 439 ; *Ferrie* v. *Public Adm'r*, 4 Bradf. 28 ; *Christy* v. *Clarke*, 45 Barb. 529 ; *Tummalty* v. *Tummalty*, 3 Bradf. (N. Y.) 369 ; *Newburyport* v. *Boothbay*, 9 Mass. 414 ; *Banister* v. *Henderson*, Quincy, 119 ; *Means* v. *Welles*, 12 Met. 361 ; *Barnum* v. *Barnum*, 42 Md. 251 ; *Fenton* v. *Reed*, 4 Johns. 52 ; *Clayton* v. *Wardell*, 5 Barb, 214 ; *Jewell* v. *Jewell*, 1 How. 219 ; *Archer* v. *Haithcock*, 6 Jones (N. C.) L. 421 ; *Donnelly* v. *Donnelly*, 8 B. Mon. (Ky.) 113 ; *Clayton* v. *Wardell*, 4 N. Y. 230 ; *Caujolle* v. *Ferrie*, 23 N. Y. 90 ; *State* v. *Libby*, 44 Maine, 469.

BARROWS, J. The verdict is for the plaintiffs for the amount claimed in the writ for supplies furnished William O. Kaherl, *alias* Orrin S. Carle and his alleged wife, Mary O. *alias* Orraville M. and their children. The defendants present the case upon a

motion to set aside the verdict as against law and evidence and upon exceptions to the refusal of the presiding judge to admit certain evidence by them offered, the character and bearing of which will be hereafter considered.

They claim the motion should be sustained for want of proof that the plaintiffs sent the defendants the requisite statute notice that these paupers had fallen into distress and were receiving pauper supplies from the plaintiff town.

Ordinarily if the report of all the evidence failed to show either proof of such notice or an admission at the trial that it had been given, it would be good cause for sustaining the motion. But in the present case any defect of proof in that respect is supplied by other portions of the report which show that at a previous term the defendants had been defaulted, the default to be taken off upon condition among other things that they should file with the clerk on or before a day certain a specification of their defence ; and that the specifications filed under that order make no denial of the notice which is duly averred in the writ. The condition was not a mere idle ceremony. Its force and effect must have been well understood by the counsel on both sides. It was one which the presiding judge might well impose, with or without the aid of rule nine, as a condition of taking off the default, and its effect if properly regarded, could not be otherwise than salutary for both parties. Looking at the specifications filed under this order, and giving them their due effect, we find that the only points really open to the defendants were the furnishing of the supplies by the plaintiffs as alleged — the validity of the marriage of W. O. and M. O. Kaherl — the legitimacy of their children and consequently the settlement of the alleged wife and children in the defendant town.

It was not necessary under these specifications that plaintiffs should prove the statute notice to the defendants, nor the necessity of the supplies, nor that they were applied for or received in the manner required by chap. 119, laws of 1873, nor that Kaherl or Carle had his legal settlement in Belgrade. The office of a specification of defense differs from that of a brief statement in this, that the former is in part designed to limit the matters that

are controvertible under the general issue — the latter to enable the defendant to introduce what he could not properly prove under that plea alone. Looking at the positions which it was open to the parties to take under the specifications here filed, we find no reason to order a new trial unless the exceptions to the exclusion of testimony offered by the defendants ought to be sustained. These we will now consider.

The plaintiffs proved the regular performance of the marriage ceremony between Kaherl and the woman who is alleged in the writ to be his wife, March 19, 1873. All that was necessary to make a legal and valid marriage, if the parties were capable of contracting one, was made to appear. It had been followed by half a dozen years cohabitation and the birth of children. To impeach it the defendants proposed to establish the fact of a previous marriage of Kaherl with Esther Craig, (who was living March 19, 1873, the date of the marriage with Mrs. Ott,) by evidence of cohabitation for a considerable number of years, reputation, birth of children and contemporaneous admissions and claims of both the parties to the alleged marriage contract. They did not offer to prove a legal marriage by direct testimony and the presumptive evidence above referred to was rejected by the presiding judge.

Defendants contend that it ought to have been received and if found full and complete enough to satisfy the jury that Kaherl had a legal wife alive at the time the marriage was solemnized between him and Mrs. Ott then that marriage was invalid, and the jury should have been instructed that she and her children by Kaherl did not acquire thereby a settlement in the defendant town. This result would unquestionably follow if there was evidence upon which it would be competent for the jury to find that there was a valid marriage between Kaherl and Esther Craig. *Harrison* v. *Lincoln*, 48 Maine, 205 ; *Howland* v. *Burlington*, 53 Maine, 54 ; *Pittston* v. *Wiscasset*, 4 Maine, 293. The inquiry is as to the admissibility of presumptive evidence to establish the first marriage as against direct proof of the due solemnization of the second, while Esther Craig, the reputed first wife, was living.

The question is not free from difficulty and there are *dicta* and decisions of respectable courts which go far to sustain the ruling at *nisi prius* by which the evidence was excluded. But the general rule has long been understood to be as laid down by LORD KENYON, in *Leader* v. *Barry*, 1 Esp. 353 ; that in every *civil* case except an action for *crim. con.* general reputation, the acknowledgment of the parties and reception by their friends, &c. as man and wife, was sufficient proof of the marriage, although in an action for criminal conversation for reasons well assigned by LORD MANSFIELD, in *Birt* v. *Barlow*, 1 Doug. 170, (referring to *Morris* v. *Miller*, 4 Burr. 3057) there must be proof of an actual marriage, and the same strictness is required in an indictment for bigamy. See also *Read* v. *Passer*, 1 Esp. 213, 214 ; *Hervey* v. *Hervey*, 2 W. Black, 877 ; *Miller* v. *White*, 80 Ill. 580 ; and numerous other cases, where it is said that no other exceptions should be allowed. That proof by circumstances, reputation, conduct of the parties and the like has long been held competent in settlement cases, see *Rex* v. *Stockland*, Burr. Set. Cases, 508 ; 1 W. Black, 367 ; *Newburyport* v. *Boothbay*, 9 Mass. 414.

The court in this state have explicitly recognized the general rule in *Pratt* v. *Pierce*, 36 Maine, 454, and *Taylor* v. *Robinson*, 29 Maine, 328, where the court add, "we find no authority for a distinction in cases, where the party to the marriage is a party to the suit, and wishes to prove the marriage, and where the attempt to establish the marriage is by one who is a stranger thereto ;" citing *Fenton* v. *Reed*, 4 Johns. 52, and the text books of Starkie and Greenleaf. The nature of the testimony, and the grounds of its admissibility are dealt with somewhat *in extenso* in Greenleaf's Evidence, vol. 2, pp. 443, *et seq.* §§ 461, &c. 2d edition.

The general doctrine unquestionably is, that circumstantial evidence is always competent, and in most cases sufficient proof of marriage in civil cases.

How did this exception (for an exception it is conceded to be, in the cases which most strongly support it) grow up, and upon what reason is it based?

Apparently, part of the confusion in the decisions and *dicta* has come from the use of the terms, "marriage in fact," "actual marriage" and "legal marriage," to denote a marriage proved by direct evidence in contradistinction to a marriage proved by circumstantial or presumptive evidence. It should be borne in mind that it is an actual legal marriage, which is the thing to be proved, whether the evidence offered is circumstantial or direct. As to what constitutes a legal and valid marriage, see R. S., c. 59, § 17. Another source of confusion is the failure to regard the distinction between civil and criminal cases as to the amount of evidence required to overcome the presumption of innocence.

In the latter class it must be such as shall exclude all reasonable doubt of guilt, while in the former, where it comes collaterally in question, it suffices if there is a preponderance of evidence, which satisfies the jury of the fact. This court recognizes that distinction in *Ellis* v. *Buzzell*, 60 Maine, 209. And, with us, even in criminal prosecutions, while common reputation, and the like, are not competent to prove the marriage, other circumstantial evidence, such as cohabitation, birth of children, and contemporaneous recognition of the fact, by the parties to the marriage contract is admissible. *State* v. *Libby*, 44 Maine, 478 – 480. Still another element which has served to introduce clashing *dicta* into the discussions in the different courts, is the fact that the question most frequently has arisen in cases involving succession, legitimacy of children, and dower where the judges, all alike animated by the desire to decide according to the legal rights of the parties, have chanced to be very differently impressed by the probative force of the ever varying character and combination of the circumstances, adduced in the different cases to establish a marriage by presumptive proof.

But shall we lay it down as matter of law that there can never be, in a civil case, where it comes collaterally in question, an amount of circumstantial evidence, sufficient to establish a legal marriage against the presumption of innocence?

That is precisely what a decision which rejects all circumstantial evidence in a case like this, where it comes in collision with

direct proof of the due solemnization of a subsequent marriage, amounts to.

The question is one of too much practical importance to pass without a strict examination of the decided cases, and a careful consideration of the consequences of the decision. It is easy to conceive of cases where we might find ourselves compelled to do an irremediable wrong, if circumstantial evidence of a prior marriage can never be allowed to come in to overcome, if it can, direct proof of a subsequent marriage. Suppose a young couple, of decent character and repute, to have been married many years ago in a town where the records of marriages have since been burnt, or by a minister or magistrate who has failed, as they not infrequently do, to make due return to the records of its solemnization, and that the witnesses to the marriage are dead; but the parties have lived and cohabited as husband and wife in the immediate vicinity, and among their kindred and friends, and had children born to them, and have been recognized by their neighbors and by each other as lawfully married. Now, suppose the husband after a series of years becomes depraved and reckless, leaves his family, goes to another section of the state, and there is direct proof that there, under an assumed name, he goes through the form of marriage with a woman in low life, with whom he afterwards cohabits and by whom he has children. Suppose the question arose in a suit touching dower, or inheritance. Is it a conclusion of law that direct proof of the second marriage must of itself deprive his real wife of dower, and his legitimate children of the right of inheritance, and stigmatize her as a concubine and them as bastards, because circumstantial evidence of the first marriage, cannot, however strong, be received to combat the presumption of innocence, and the validity of the second marriage? To us it seems to be a question, not of the competency, but of the strength and sufficiency of evidence in every case, and that the testimony should be received and passed upon by the jury, subject to the power of the court to set aside any unwarrantable conclusion which they may draw.

How is it practicable for the court, without hearing it, to ascertain the probative force of all the circumstantial evidence,

which it is possible to adduce in a given case, and to say in advance that it cannot produce even a higher degree of satisfaction, and certainty than would the direct testimony of a witness, whose reputation may be doubtful, or his memory treacherous and indistinct, or who may have some secret motive to testify falsely? Again, suppose it is the party whose right it is to move first in the trial of the cause which relies on the circumstantial evidence, is it to be objected to and excluded, on proof to the presiding judge, that his opponent has direct evidence of another marriage, the effect of which would be to show one of the parties to this, guilty of a crime, if this is to be regarded as established? Or, after the direct evidence of the other marriage has been adduced, is the judge to be called upon to rule out the circumstantial, however satisfactory, as not fit to be weighed against the presumption of innocence? This court has not been wont to regard the evidence of circumstances thus lightly. We have seen it was admissible to affect, possibly to control that presumption even in criminal cases. *State* v. *Libby, supra.*

In a settlement case where the validity of a second marriage was in issue, the presumption of innocence was not held to outweigh the presumption of continuance of life in the absence of evidence. *Rex* v. *Harborne*, 2 Ad. & E. 540. And see remark of KENT, J., in *Harrison* v. *Lincoln*, 48 Maine, top of p. 209. But the decisions relied on to support the ruling must not be overlooked.

The most direct is *Poultney* v. *Fairhaven*, Brayton, Vt. 185. The case was an appeal from an order of justices for removal of paupers from the plaintiff to the defendant town. The male pauper, called by plaintiffs, testified that he was lawfully married to the female pauper. Defendants then offered to prove by the female, that prior to that marriage she was lawfully married to another man who is still alive, but her testimony was excluded, as was also evidence of the former marriage by cohabitation and reputation; and plaintiffs had a verdict. Upon a motion for new trial there was a *per curiam* opinion, the *whole* of which is as follows: "Asenath being *prima facie* the wife of John Slyter, it was necessary a previous legal marriage should be proved to

show she was not his legal wife ; cohabitation with Austin, though sufficient to charge him, was not proper evidence to disprove her the wife of Slyter." "Motion dismissed." If the case is correctly reported, it evidently had very little consideration. No reason is given for making an additional exception to the general doctrine. Not so with *Jones* v. *Jones*, 45 Md. 144, and S. C. on a second trial, 48 Md. 391, upon which the ruling at *nisi prius* seems to have been based. The case was carefully examined and in the second opinion the authorities, *pro* and *con*, were deliberately reviewed.

The whole basis upon which the exception to the general rule rests is developed. If it be found either that the doctrine of the Maryland decision ought not to be sustained to its full extent, or that the case before us is not within it, on account of some essential difference between the facts presented, or between the criminal law of this state and that, we may be saved the necessity of a further detailed review of the authorities on either side. In the outset, it is to be observed that at neither of the trials in *Jones* v. *Jones*, does it appear that any evidence, either circumstantial or direct, of the fact of the marriages in controversy was excluded. The questions arose in the first instance upon the withholding of certain requested instructions as to the sufficiency of the evidence, and in the second, upon the giving of those instructions so that the second decision is simply a reiteration of the first, with a more elaborate review of the authorities. The Maryland court had their whole case before them, and it was in brief as follows : It was, a succession case, to determine whether the claimant, H. J. was the legitimate son of the decedent, A. D. J. and whether there was a widow, and if so, who. The parties involved were colored, and some of them at least formerly slaves. On the part of H. J. it was claimed that, although he was the fruit of a meretricious connection, still his father subsequently married his mother, who was a slave, and the ordinary circumstantial evidence was offered to prove it. On the other hand it was claimed that at the date of that alleged marriage, A. D. J. was the lawful husband of A. S. who died in 1844, after which he married a third woman, F. M. who

claimed to be his widow.   The court very properly held that, where the commencement of the cohabitation was meretricious, the mere continuance of it without any evidence to show a change in the relations and status of the parties would not prove a marriage, but if there was such evidence of a change in their conduct and repute, though not amounting to direct proof of marriage it would be competent ; and, applying it to the case in hand, if there was proof that after the illegitimate birth of H. J. there was cohabitation of his father and mother, the latter assuming the name of the former, and they treated each other as man and wife, and him as their child, and were treated and reputed to be man and wife by their friends and acquaintances, these are facts to be submitted to the jury, from which marriage may be inferred, notwithstanding the original illicit connection.   .   .   But the court proceeded to hold that if it be found as a fact that A. D. J. was married to A. S. or F. M. during the lifetime of the claimant's mother, there being no evidence of any divorce, all mere presumption of previous marriage with her, founded simply on habit and repute, is at once overthrown, and it then becomes incumbent upon the claimant to establish the alleged marriage of his mother to A. D. J. as an actual fact by more direct proof.   And it is plain, from the reasoning of the court and the authorities cited, that this conclusion rests on the strength of the presumption that A. D. J. was not guilty of bigamy.   This is simply affirmed in a more elaborate opinion in 48 Md. 391.   It is apparent from some expressions in the cases that the cohabitation of A. D. J. with the mother of the claimant, was not regarded as a crime, or as anything but an offence against decency and the moral law.

Hereupon we remark, that it would seem that if the legal marriage of A. D. J. with A. S. February 14, 1819, was established the strongest direct proof of his subsequent marriage to the claimant's mother, could not have availed the claimant; and that, if by including in the same category, the subsequent marriage with F. M. it is intended to assert that no circumstantial evidence, however strong, of a previous marriage can amount to a preponderance of proof against the presumption of innocence,

we do not assent to the doctrine. With us, fornication and lewd and lascivious cohabitation are offences against the criminal law, as well as bigamy. We do not see why we should infer that two persons have been guilty of the former offences, rather than that one of them has been guilty of the latter. Nothing but the adoption of the doctrine that proof of a marriage ceremony, regularly solemnized, raises a presumption not merely *prima facie*, but *juris et de jure*, against the validity of a prior marriage of one of the parties, whenever it happens that such prior marriage can be proved by circumstantial evidence only, will justify the exclusion of the circumstantial evidence.

This must be so on account of the practical difficulty in conducting a trial where such an issue is involved, to which we have before alluded.

True, the evidence may or may not, when presented, be found sufficient to prevail against the counter evidence and the presumption of innocence.

But like circumstantial evidence in other cases we cannot say, without hearing it, that it will not be strong enough not only to preponderate against that presumption, but to exclude every reasonable doubt.

We do not find in the cautious action and utterances of the Maryland court, an authority against its admissibility.

In nearly all the cases cited the courts are dealing with the weight and effect of the testimony, and not with its competency.

In *Archer* v. *Haithcock*, 6 Jones, Law, N. C. Rep. 421, the admissibility and sufficiency of the circumstantial, against the direct evidence is affirmed, and the court refuse to recognize any exceptions to the general rule, except in prosecutions for bigamy and actions for criminal conversation.

In this country the conditions are far less favorable to the making of direct proof of a marriage, when a contest arises in which it is called in question than they are in England. See the forcible remarks of CAMPBELL, C. J., as to the difficulty of making other than circumstantial proof with us. Herein is a sufficient reason why the English decisions upon this point should

not be regarded as applicable to the different state of things which is found here.

The Upper Canada decisions naturally follow the English.

Looking now at the proof offered in the present case, we find that the defendants took one step toward making proof by the record of the marriage of Kaherl with Esther Craig. Their intentions of marriage were duly recorded in the town where Kaherl lived, September 13, 1854. The defendants proved also that the books containing the records of intentions and marriages, between 1852 and 1857, in Augusta, where Esther Craig resided, and where the marriage is supposed to have taken place, were long since burnt up or lost, and that David Wilber, the magistrate, by whom they claimed the marriage was solemnized, is dead. The lack of record proof is thus accounted for. They could not call upon Kaherl to criminate himself. We think it cannot be said as matter of law that the fact that he had, under an assumed name, contracted a second marriage, while Esther Craig was living, raises such a conclusive presumption that he was not previously legally married as to exclude the ordinary circumstantial evidence to show that he *was*, in a suit where the validity of the two marriages comes in question.

Whether circumstantial evidence will suffice to establish in a civil case of this description, the validity of a prior marriage as against a later one, where there is direct proof of the performance of the ceremony must depend always upon its character and force, in each case where it is presented. We cannot say, until it has been heard, that it will not outweigh the counter evidence, and any presumption of innocence there may be to overcome.

*Exceptions sustained.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.