## MARY APPLEGATE

*v.*

## DANIEL B. APPLEGATE.

A woman's declarations as to her marriage with a certain man; her introduction to and association with his family as his wife; her cohabiting with him for months and her giving birth to a child recognized as his, constitute a marriage, and estop her from obtaining alimony from a man who was formally married to her during her first husband's lifetime.

On bill for alimony.

Applegate *v.* Applegate.

*Mr. S. G. Naar*, for the complainant.

*Mr. H. N. Barton*, for the defendant.

Bird, V. C.

The prayer of this bill is, that the defendant be ordered to furnish suitable support to the complainant, who claims to be his lawful wife. The defence is, that she is not his lawful wife, because at the time of the performance of the marriage ceremony she was the wife of another man by the name of Lawson, who was then living. The proof of such prior marriage is two-fold: (1) the statements or admissions of the parties that they were married, and (2) cohabitation for the principal part of the time between the period of such statements and the alleged second marriage.

1. Lawson had the complainant accompany him to his father's house, where he introduced her as his wife. This was after he had been visiting her very frequently, and after she had also frequently called upon him at his father's house. From the time of this introduction his parents and his sisters understood and believed that they were married, received them into their house supposing that they were married, and in all respects treated them as sustaining the relation of husband and wife to each other. When he introduced her to one of his sisters, although she was known to them before, he said, " I have been getting married, and this is my wife." To Mrs. Nelson she spoke of Lawson as her husband, and Lawson spoke of complainant as his wife.

Besides these verbal admissions and statements, in the presence of each other, that they were married, they prepared a formal certificate of marriage, such as is usually certified to by ministers of the gospel, and given by them as evidence of the solemnization of marriage agreements. To this they appended the name of a most worthy and highly-respected clergyman, who knew nothing of them or the certificate until shortly before this hearing. This pretended certificate the complainant had the possession of, and produced it in the presence of two of the sisters of Lawson, and desired them to examine it in proof of her marriage

to their brother. Afterwards, Lawson himself had the possession of this paper, and it was found in a bureau drawer in his father's house, in whose house Lawson died nearly three months after the alleged second marriage of the complainant to the defendant.

2. The cohabitation referred to consisted in their acting as man and wife at the house of his parents and of her parents, and of his renting three different houses, one after the other, and living in them for several months with the complainant, and in all respects treating her as his wife. While so keeping house they were visited by his parents and brothers and sisters, highly respectable people, and by other respectable citizens in the neighborhood. His sisters assisted them in making preparations for house-keeping and in putting the house in order for that purpose. While so keeping house the complainant gave birth to a child, and about that time one or more of the members of Lawson's family was or were present. They thus cohabited, I think, for more than a year, either in houses which had been rented by Lawson or in the home of her parents.

They were separated for a short time before the complainant's alleged marriage to Applegate. It is not at all satisfactorily stated what were the grounds of their separation, whether it was because of alienation of affection or necessity.

Many other statements of the complainant and Lawson appear in the testimony of witnesses which I have not adverted to, because, not having been made in the presence of each other, so far as they have any force at all they are statements in their own behalf, and are regarded as illegal in this controversy as against this defendant.

Was the first alleged marriage a valid one? If so, it must prevail over the second alleged marriage, although such second marriage was solemnized by all the statutory requirements, while the former was not. There may be valid contracts of marriage at common law. *Vreeland v. Vreeland, 3 C. E. Gr. 43; Goldbeck v. Goldbeck, 3 C. E. Gr. 42; Wilson v. Hill, 2 Beas. 143, 145; 1 Bish. Mar. & Div. 513; 2 Add. Cont. 848; Bissell v. Bissell, 55 Barb. 325; Hutchins v. Kimmell, 31 Mich. 126;*

*Schoul. Husb. & Wife* § *11;* being once bound the parties are bound forever, *Schoul. Husb. & Wife* § *12;* mutual consent, as in all contracts, brings them together, *Schoul. Husb. & Wife* § *12; Fenton* v. *Reed, 4 Johns. 52 (4 Am. Dec. 244)*; *Londonderry* v. *Chester, 2 N. H. 268; Reed* v. *Reed, 52 Mich. 117; Teter* v. *Teter, 101 Ind. 129 (51 Am. Rep. 742, 743)*; *Cheney* v. *Arnold, 15 N. Y. 345 (69 Am. Dec. 615 and note,* where many authorities are given); *2 Greenl. Ev.* §§ *460, 461.*

The real question in every such case is, whether the proof adduced is sufficient to establish such first alleged contract of marriage; if it is, it in all cases prevails, except upon indictments for bigamy and in actions for *crim. con.* ; and I have not been able to find any case which has directly adjudged that, if such first alleged marriage be unequivocably established by the proof of the mutual consent of the parties, as I think it has been in this case, then such former marriage must give way even in criminal cases; but numerous cases have been found where marriage has been presumed from cohabitation, which presumption the courts have held should give way to save the accused from the consequences of the crime of bigamy. I think a careful study of the authorities will show this to be a fair statement of the law. *Camden* v. *Belgrade, 75 Me. 126 (46 Am. Rep. 364)*; *Jones* v. *Jones, 48 Md. 391 (30 Am. Rep. 466, 471)*, on which page it is clearly admitted that in case of direct proof the former marriage must prevail; *Commonwealth* v. *Stump, 53 Pa. St. 132 (91 Am. Dec. 198, 201)*. For further authority on this subject, see *1 Bish. Mar. & Div. ch. 25* §§ *438, 439, 440, 441,* and the cases in the notes, where the true doctrine and its limitations are stated with fullness and precision. Mr. Bishop says: "These general elements of proof, namely, cohabitation, reputation, declarations, conduct and reception among friends and neighbors as married, are commonly, in a perfect case, found in combination. Together they make a complete case."

I am of opinion that, in case a woman brings her suit for alimony, and the defence is that at the time of her alleged marriage with the defendant she had a husband living by a former marriage, supported by proof of her own declarations of such

prior marriage, allowing herself to be introduced as the wife of such alleged former husband by him, cohabiting with him for many months in houses rented by him, giving birth to a child which was recognized as his, and visiting and being visited by their friends, there is abundant proof sustaining the relation of husband and wife, and she is estopped, and her suit must fail. I will so advise.