The Chief Justice
delivered the opinion.
This was an action for slanderous words. The defendant pleaded that the plaintiff is and was, at the emanation of the writ, his lawful wife; to which the plaintiff replied, traversing the allegations of the plea, and issue was thereupon joined to the country.
On the trial of the issue in the circuit court, it appeared from the evidence that, some time previous to the commencement of the suit, a license for the marriage of the plaintiff and defendant bad been issued by the clerk of the *369 ctuinty court of Jefferson county, with the consent of the plaintiff'sfather, and that the marriage ceremony was performed at the house of her father in fit.rsonville, in the state of Indiana, where she resided, by the reverend Mr. Cliabrat, a priest of the Roman catholic religion, who had previously obtained from the county court of Nelson county in this state, where he resided, a testimonial authorising him to celebrate the rites of matrimony; but that the defendant declined cohabiting with the plaintiff, and that the marriage bad not been consummated.
A marriage cei.ebra,'’‘l ⅛* must be test* ed by the ^ws °f
After the evidence was dosed on both sides, the counsel for the defendant moved the court to instruct the jury, that if they believed the whole evidence-in relation to the intermarriage of the plaintiff with the defendant, and that the marriage had been celebrated between the plaintiff' and defendant before the commencement of this suit, at Jef-fersonville, in the state of Indiana, and not in Jefferson county in this state, the marriage was nevertheless valid, and that in tliat case they should find for the ydafn+iff. The court, with the assent of the plaintiff, reserved the point, not being prepared to give an opinion, and the jury gave a verdict for the plaintiff, subject to that opinion. The court, after taking time to consider, decided that the law was for the defendant on the point reserved, and rendered judgment accordingly; to which the plaintiff excepted, spreading the whole evidence in detail upon the recorqif and has brought the case to this court by an appeal.
As the marriage was entered into in the state of Indiana, the question, in relation to its validity, must, no doubt, be decided by the laws of that state. Whether, however, we consider the question with reference to the laws of Indiana or this country, the result will be the same, for the sta lute of that country, regulating marriages, which was read on the trial in the circuit court, and made a part of the record by the bill of exceptions, appears, as to its effect upon the point now in controversy, not to differ materially from the statute of this country upon the same subject, and the common law is in force in that as wi ll as in this country, so far as it has not been altered or repealed bv'slatute. It is obvious that the marriage between the parties in this case was not celebrated according to the provisions of the statute oí either country. It was not done according to the provisions of the statute of this country, because the female partv did not reside in the county, lrotn the clerk’s office of *370 w}>¡ch the license was issued; and it was not done accord-*n§ **,e slaiB,e Indiana, because the license was not issued by the proper officer of that state. But neither the statute of Indiana nor that of this state, avoids a marriage not celebrated according to its provisions. The object of tjJe Jegis¡ature of both states was manifestly, not to declare what shoold be requisite to the validity of a marriage, but to provide a legitimate made of solemnizing it; for the le!?,^a,are sP®aks 1101 of the validity of the marriage, but of the celebration of its rite, and addresses itself, not to the themselves, but to the functionaries whom it antho-rises to perform the requisite ceremonies in solemnizing the o**vria-ge. short, the legislature of either state has done nothing more than substitute a statutory tnodeof solemni» z¡¡>g the rites of matrimony, instead of the common law nródfc of doing it in facie ecdesiae; and it was necessary to do this, because there was in this country no church .established by law, and consequently none that bad authority to solemnize the rites of matrimony The effect, therefore, of the statutory mode of solemnizing matrimony must be precisely the same, with respect to the validity of a marriage in this country, as the common law mode with respect io the validity of a marriage in England. We are then led to enquire what the doctrine of the common law is, op-on this subject.
A marriage celebrated, but not ac-provision of he staiute the^xdem li ziitionofmlt" venheless tute isdlrec-tory to the functionaries address'd "elf to the parths
A mam e ls a civil core tract amt demands only the requisites orar>iiiiy5uu-lingness, and the act of con-tractmp ^ the English law the con-trcct should facie ecclemne
ferriage is nothing but a contract; and to render it val-it is only necessary, upon the principles of nature! law, Part*es f’litW»* minis n 1 — willing te coa-should actually contract.^ A marriage thus made without further ceremonv, was, according to the simplicity 0f the ancient common law, deemed valid to all purposes^ a(^ sucj, cor¡tinued to be the law of England until the timw . ** . of r-'pe Innocent the I nurd, when the ceremony ot celebrating matrimony in facie ecdesiae was first introduced io-to that country. That ceremony, however, though intro-duccd by the usurpation of the church, was afterwards re-cognised to a certain extent bv tire common law; and it lV0U]c; have been idle for the law to have recognised the cer-enwny without attaching to u any legal consequence It was therefore held, that to constitute a marriage de jure and render it valid to every purpose, it must be celebrated ia the church. fíat a marriage contracted wit trout that ceremony was, nevertheless, a marriage %n fact, and was still deemed valid to most purposes. Baron and Feme, 3, 4⅝- *371 and 5; 2 Salk. 437, and 2 Black. Coen. 439; Johnson’s i»ep. o*. .
a marriage de ficto, <o’ noide jure,ia Kent's "as*it relatest >per* s°nai matters torts‘
. Even in the ecclesiastical eourts, a marriage defacto was not held to be void; for if the parties afterward* cohabited, they were not liable to be punished for fornication; and if either of them married another, such second marrriage, though celebrated in Jacte ecclesiaein due form, tv as deemed void ab initio.
And if in those tribunals by whose encroachments upon the civil authority, the ceremony of solemnizing in facie ecclesiae was introduced, a marriage without that ceremony was deemed valid to some purposes, we would naturally ex peel that the eourts of common law would regard such a marriage with still more indulgence. We accordingly find that, except in certain real actions, it was held not to be necessary to plaee a mairiage de jure For it was only those eases that the plea of ne ungues aceouple in loyal matrimony which pul in issue, the legality of the marriage was admissable Fo all personal matters and causes, a marriage defacto was sufficient, and in such cases the plea of ne un-gues aceouple in loyal matrimony was inadmissible. Barron and Feme, 44, 45.
Un ce in the case of Alleyn and wife against Gray, 2^ S¡¡lk. 437. which was an action of debt on a bond, the plea of ne ungues aceouple in loyal matrimony was held bad on demurrer, not only because it changes the mode of trial^ but because it admits a marriage but denies the legality afj it; whereas, a marriage de Jacio is sufficient, and ivhetbcri legal or pot legal, is not matciial. feo in an action of trcs-4. pass brought by A against Baud C. B pleaded that C is ilie wife of the plaintiff, and demanded judgment of the writ. The plaintiff replied ne ungues ueeouple in loyal matrimony, which was held bad, and he was driven to say abe was not his wife, for if site was bis wife in fact, tt was sufficient. Baron and Feme. Ubi. supra.
So in an action for criminal conversation, it is sufficient to prove a marriage in fact, though the evidence arising from cohabitation and icpulauon is not admissable to prove such marriage. And even in att indictment for bigamy, a marriage in fact is sufficient to warrant a conviction in cast of a record marriage. Coro. Dig. til. Baron and Feme, letter B, and the cases there cited.
In fine, in every shape in which the question has been presented to tbe courts of common law, in personal actions, *372 or in relation to personal matters, a marriage in fact has been deemed valid. A contrary doctrine, in this country, would be attended with the most mischievous consequences. The statute pr< scribing the mode of celebrating the rites of matrimony, requires that when either party is under the age of twenty-one, tlte consent of the parent or guardian shall be given in person or in writing, that bond and security sbhall be given before license can be issued: 1’hat license shall be issued only by the citric of the county where the female party resides; and that no clergyman who has not previously obtained testimonials for that purpose from the county court, shall celebrate the rites of matrimony. A compliance with the whole of these particulars is necessary to render the marriage conformable to the statute; and a failure to comply with any one of them, would render it but a marriage in fact; and if a marriage in fact be void, many of the marriages of the country would be so, for there are many in which there has been a failure either intentionally or otherwise, to comply with some one or more of (he formalities presented by the statute. A doctrine which would thus tend to vitiate a great proportion of the marriages of the counrry would result in incalculable evils, and cannot be admitted to he correct.
The conse quenc.es of declaring a . tvr,l'i iage d - facta void V" U/d t e plor.tb.e to society.
Tho* cohabitation is necessary to render a marriage valid when entered into per ver-ba de futuro, h is not so when .the tnarri; ge was entered into per verba de presentí.
But admitting a marriage in fact to be valid, it ¡3 contended that to constitute such a marriage, consummation is necessary; audit is inferred, as the marriage in this case was not consummated by cohabitation, that it does not a-tnourit even to a marriage in fact.
The position assumed in this argument is absolutely untenable. it is neither founded on reason nor supported by authority. By the law of nature, the contract of marriage is complete without consummation. 1 Ruiberford’3 lust. 345; audit is a maxim of the common law, borrowed, it is true, from the civil law, but founded upon the reason and nature of the thing, “that consensus, non concubüus jacil matrimoniumCo. Lit 34; 1 Black. Com. 433.
Marriage and cohabitation are two things. The latter is the object to be obtained by the former, and to make it lawful, must be preceded by the former. Ii is said, indeed, that a marriage contracted per verba de futuro, which is in truth nothing but a promise to marry in future, is a valid marriage if the parties afterwards cohabit; but the cohabitation, even in that case, does not constitute the marriage. It is only evidence of the marriage; and the same author- *373 ¡lies which say lhat a contract per vería de futuro becomes a marriage it' the parties afterwards cohabit. invariably, lay down the doctrine that a marriage per verba de presentí is, forthwith, a marriage, and complete without cohabitation.
Hardin for appellant, Pope for appellee.
Upon the whole, therefore, a majority of the court are of opinion lhat it was sufficient for the defendant to support tiie issue on his part, to prove a marriage in fact; and that the marriage proved in this case was of that character.
The decision of the point reserved hy the circuit conrt was, therefore, correct, and the judgment must be affirmed.
On rendering this opinion, Judge Mills delivered the following dissent:
I concur with the majority of the court in deciding that the marriage in this case was unauthorised in this case on the part oí the clergyman, and lhat it would have been as valid if celebrated bv any other individual as by him. I also agree that the case presents itself in the same attitude under the laws of Indiana, as it dots under our own.
But I differ essentially, in not believing that by the common law, this naked contract of marriage made per verba de presentí, ought to be adjudged a valid marriage, solaras to destroy the plaintiff’s right of action, in tbis suit. A marriage in England, (and it is so with us,) solemnized with all the forms of law, so as to be completely stiieci a marriage de jure, merged the right o'- the wife. Her personal estate became her ¡lusbahd’s. Hr had a right to the profits of her lands during life. She could make no contract or commence a suit without joining her husband. Her reputation was completely in his power, and he might slander it at pleasure And wliat did she receive for ail thus? Nothing but the support and protection of her bus-band, and a right to one third of his personal estate absolutely, if she survived him, and one third of bis real estate during life. Neither of these could she obiairi without proving a marriage in facie eedesiae. For it is a well settled principle in England, that the wife cannot recover dower without proving a marriage de jure, if celebrated within the realm. 2 Wil. 127, is in point, and shews that she eould give no other a swer to the plea of ne ungues decouple but the bishop’s certificate. It is aiso decided in 2 Salk. *374 119, that fhp husband ivas not entitled to admini'dratiott on the estate of his tyife, whereby be gaine I tier personal estate forever, without proving a marriage i" all the forms of 11iv. These cases prove, that where either tile wife or the husband, after tile death of the other, cones in contest with the representative, he or she must prove a legal mar* rings or forfeit ail. if this be the principle of the English law, in a contts1 between the survivor and representative, bow much stronger the reason — tiow much greater the propriety, in applying the rule to the case, where the husband and wife are bolt) living, and are parties to the contest, and trying the validity of t¡he marriage? It would be unreasonable to apply the rule to a case like the present, and strip the woman of her estate and also of her reputation, and not give her, if she survived her husband, the paltry quid pm <pw, dower in his estate! f'or this reason it is believed that To> case can be found in the English hooks, where it was adjudged, between husband and wife, parties contesting a marriage, that arty thing less was admitted than the proof of a marriage de jure. The case in S ilkeid, of a defendant sued on a bond io the wife before coverture, not being per-mi'ted to question the marriage so far as to require proof thereof by the bishop’s certificate, is not in point He was no party to the marriage. It was not bis business wiietlier it had been solemnised by the proper authority, if the parties themselves did not question it, and cohabited as married persons. It was sotttid policy to prohibit the stranger from disturbing the domicil, and destroying domestic hap-pioes, by proving such persons not legally married, when bis debt would be due by as strong an obligation afterwards as it was before. Put the case, that this woman should survive the present defendant, and should claim one third of the personalty, and dower in the realty of the large estate, which it is shewn by the record the defendant possesses, and bis representative should come before this court contesting the point with her oil the present proof. Could we, by the English common law, sustain her claim? This may be a formidable question in this country, if law is to furnish the rule. Ii is certain we conld not, if that is to govern the decision in such cases. V\ould it be proper, then, to adjudge away her reputation now, and refuse her the low equivalent of interest in his estate? In this case it is shewn that lie cohabited not all with Iter, from the hour oi the marriage, and was the first to pronounce tue *375 iSeremonv void. I cannot, therefore, unless compelled by impel ious law, adjudge that he is now possessed of her Tights, her properly, or her regulation. 1 would confine him lo proof of a legal marriage or that cohabiiation, which is an incun.bent duly, Blackstone tells us that such marriages are good to many purposes, in the passage quoted by the court. This shews that it is not good for every purpose, and this is one, for which I would not allow it to be good, unless restrained by statute or express adjudication; and none such has been produced.
fewenburn on marriages, pages 233, 234, 235, lays it down, that by the civil and common law the lands and goods of the wife belonged to the husband, but by the common law the rule was otherwise. And he adds, “so that neither spousals de presentí nor de future consummate, do make her goods his, or his goods hers Hence it is that a woman contracted in matrimony dying before the celebration of her marriage, may make her testament, and dispose of all her goods at pleasure.” He states likewise Shat their issue by the laws of the realm is not ¡awful, and cannot inherit, and she is not entitled to dower. Thus stood the common law before it was contaminated by spiritual courts. If he gained no rigbl to her goods, would he not have been subject to trover or deiinue fi r them, in case he disposed of Hum? If she could not sustain such action, then she had a right without a remedy, ai d he had a right lo dispose of that to which he had no tule, and which the law forbade him to touch. If she could bring the action, why give hint a greater control ov*r her reputation than hr had of her estate, and merge her right to protect that, in the marriage, fey which both he and she acquired nothing else?
Thus far i have consider! d the case as if the English common law was in force. But I by no means admit that it < ught to govern the question. Is is not conceded as aa historical fact, that mariinge, anterior loPepe Innocent Ilf, was allowed valid when mud» by the naked contract per Verba presentí. It then consisted rather of acts than words. The husband attended the residence of the bride, and took her borne in process on to his residence and commenced cohab ;ation. .Then, and not till then, she was said to be nupta. that is. manird. This, however, as well as almost all testimony or the subject, is of pagan origin, and cat rot l ate mm-ti i fl e. ce on the qin slion. Certain it is ⅛⅛1 Pope inhottnt Hi. claiming a tom mission from *376 Heaven, not onlp to disciple, but to marry, all nations, claimed and seiz- d the power to marry, as belonging uot to the civil government, but to the church exclusively. Alter that lime marriage, with all its rights and incidents, became a matter of ecclesiastical cognizance. What was, and what was not marriage, was adjudged by the ecclesiastical courts, and to them the civil courts yielded this question, England became subject to the same doctrine, and her ecclesiastical courts to this day are incorporated with her government as part of its organization. Ecclesiastical adjudication then ruled this question. The cases in Salkeld, 437, 433; 3 Mod. 165; 6 Mod. 155, are instances where the most eminent functionaries of the common law yielded the supremacy to ecclesiastical authority. These ecclesiastical courts had matrimonial suits in the form of libels, with process similar to our ehancerv courts, in which they decided that verba de presentí and verba de futuro constituted a valid marriage, a»d decreed the specific ex¡ cution of such contracts, and compelled the solemnization of the marriage in facie ecclesiae, where words of either kind were used. The power of this court was strong indeed. Disobedience to its determinations resulted in the writ de excommunicato capiendo, by which the effender was immediately imprisoned till be submitted to (he church. See Confectio Eccl. Courts; Boyd’s jud. Proceedings; 3 Black. lOl. It is then no wonder, under such a government as that, that rules and principles from the canon, should incorporate themselves into the common law: That thoughtless expressions, such as ‘-I marry you,” or, ‘-take you to be my wife,” spoken in a moment of unguarded feeling, should be deemed irrevocable, and seized upon by the craving and voracious disposition of a corrupt hierarchy, as constituting a valid marriage, or rather, what they would reduce by their sentence and jurisdiction to a valid marriage. Hence Black-slone, vol. i, 438, after laying down the rule that such .expressions were formerly‘'deemed a valid marriage to many purposes,” adds, “and the parties might be compelled in the spiritual courts to celebrate it in facie eccltsiaed' And it is said in Salk. 437, 438, that such is the rule of the canon law. This case in 8a!k by mistake has been quoted as declaring it a rule oí' the common low by subsequent authorities. Assuming tiien the fact, that such a rule was incorporated into the common, from the canon kr.v, it was one o! the effects produced by corrupt religious establishments, of *377 the same character with the principle, that a marriage by the priest could never be dissolved by human authority. When we adopted the common law of England, it was only so far as suited our local situation, and was compatible with the genius and spirit of our government. I would, then, select from it the most sound and liberal principles, and cast away not only all the maxims of ecclesiastical establishments, but doubt, and also reject such parts as were tainted by canonical mixtures. In a word, I would say that the common law on this point was corrupted by too long a subjection to spiritual usurpation, and that we did not adopt it into our code, aud that it is not in this respect obligatory on the court. I would take this case as onepri-móte impressimis iu this country, arid subject it to the rules ot all other contracts. But few Or none of them can be coerced specifically, when they are naked contracts consisting in words only. Those which are executed by a deed acknowledged before our courts or clerks, we allow to be valid without livery of seizin. t Those which consist in words without any execution, if oue party tenders the ful-filment, and the other refuses to accept, we hold the former no longer bound. Thus I would say, that a marriage executed according to the forms of law, should be binding at all events, and that those made in other modes should require consummation evidenced by cohabitation; while in these which exist in bare words, and which had the offer of consummation on one side and a refusal on the other, I would leave the locus penitenliae to the party rejected. — , These principles the parliament of England adopted when recovering, in some degree, their independence from ecclesiastical domination. 2 Lift 571. The same have been embraced by the statutes of Virginia, whenever, since the revolution, they have attempted to legalise doubtful marriages. It would then result that the defendant m this instance would be unshielded by a contract, in which he acted faithlessly, and which he only claims to protect himself from responsibility for injuries inflicted on the reputation and wounded feelings of the plaintiff. Ashe will not ful-fil any part of his own engagement, but holds it as a shield from liability for crime and for no other purpose, for this purpose also he ought to be stripped of its benefits.