DANIEL OWENS, defendant below, appellant, *v*. ELLA M. BENTLEY, plaintiff below, respondent.

(*May* 1, 1940.)

RICHARDS and TERRY, J. J., sitting.

*Elwood F. Melson* for defendant below, appellant.

*Walter J. Willis* for plaintiff below, respondent.

Superior Court for New Castle County, No. 111, September Term, 1939.

RICHARDS, J., delivering the opinion of the Court:

The plaintiff, Ella M. Bentley, who paid the funeral and burial charges of her mother, Sallie Cooper (Owens), is seeking to recover said funeral and burial charges from the defendant, Daniel Owens, on the ground that he is the surviving husband of the said Sallie Cooper (Owens), and as such is legally bound to pay said charges. There was no direct proof of marriage such as that of a witness to the ceremony, or a certificate issued by the minister or official by whom it was performed. Consequently the plaintiff attempted to establish both a common-law marriage and a ceremonial marriage, by proof of facts and circumstances from which such a marriage would be presumed to exist.

The defendant admits that he lived with Sallie Cooper (Owens) in Florida, that they came to Delaware together in 1917, that he lived with her here for a number of years and that she signed mortgages and notes with him as his wife; in fact he admits all of the contentions of the plaintiff except the contention that he was married to Sallie

Cooper (Owens), and by reason of that fact was liable for her funeral and burial charges.

The defendant further admits that the fact that he lived with Sallie Cooper (Owens) under the conditions above referred to, and the other facts and circumstances brought out in connection therewith, raise a presumption of marriage; but he contends that such presumption is not conclusive, and further contends that the presumption raised in this case is rebutted by his separation from Sallie Cooper (Owens) and his subsequent marriage to Rose Phillips on June 6, 1938, which was known to her during her lifetime. A common-law marriage is one without a formal marriage ceremony. In order to effect such a marriage there must be an actual and mutual agreement between parties capable of contracting, to permanently and exclusively enter into a matrimonial relation, consummated by their cohabitation as man and wife or their mutual assumption openly of the marital duties and obligations. Such marriages were adopted in this country as a part of the common law and are still recognized in most of the states. In re *Peters' Estate,* 73 *Colo.* 271, 215 *P.* 128, 33 *A. L. R.* 24; *Herd v. Herd,* 194 *Ala.* 613, 69 *So.* 885, *L. R. A.* 1916*B,* 1243; *Love v. Love,* 185 *Iowa* 930, 171 *N. W.* 257; *Reynolds v. Adams,* 125 *Va.* 295, 99 *S. E.* 695; *Umbenhower v. Labus,* 85 *Ohio St.* 238, 97 *N. E.* 832; *Peck v. Peck,* 12 *R. I.* 485, 34 *Am. Rep.* 702; *State v. Thompson,* 76 *N. J. L.* 197, 68 *A.* 1068; *Ziegler v. P. Cassidy's Sons,* 220 *N. Y.* 98, 115 *N. E.* 471, *Ann. Cas.* 1917*E,* 248.

Common-law marriages have never been recognized by the courts in this State. In fact, the following language used by Chief Justice Gilpin in the case of *Doe ex dem. Jackson v. Collins,* 2 *Houst.* (7 *Del.*) 128, clearly indicates that such marriages have not been approved:

"Marriage in contemplation of the common law is a civil contract, but it can only be contracted by some positive act, or cere-

mony, or solemnization recognized by the law of the place where it is entered into."

In order therefore to find a verdict for the plaintiff in this case, the court must be satisfied from the evidence of the cohabitation of Sallie Cooper (Owens) and Daniel Owens, and all of the other facts and circumstances brought out showing the relations which existed between them, that a ceremonial marriage was performed by which they became man and wife. Where the facts are established that a man and woman have openly cohabited as husband and wife for a long period of time, and have not only treated each other as such, but have been considered as married by those with whom they associated and came in contact, the law raises a presumption that the parties were married when the cohabitation began. *Doe ex dem. Jackson v. Collins*, 2 *Houst.* (7 *Del.*) 128; *State v. Miller*, 3 *Penn.* (19 *Del.*) 518, 52 *A.* 262; *State v. Adams*, 2 *Boyce* (25 *Del.*) 588, 83 *A.* 936; *Travers v. Reinhardt*, 205 *U. S.* 423, 27 *S. Ct.* 563, 51 *L. Ed.* 865; *Smith v. Heine Safety Boiler Co.*, 119 *Me.* 552, 112 *A.* 516; *Sebree v. Sebree*, 293 *Ill.* 228, 127 *N. E.* 392; *Commonwealth v. Hurley*, 14 *Gray* (*Mass.*) 411; *Jackson v. Jackson*, 80 *Md.* 176, 30 *A.* 752; *Potts v. Potts*, 81 *Wash.* 27, 142 *P.* 448; *Reynolds v. Adams*, 125 *Va.* 295, 99 *S. E.* 695; *Fleming v. Fleming* (*Eng.*), 4 *Bing.* 266, 13 *E. C. L.* 497, 130 *Eng. Rep.* 769.

As stated above the defendant admits that the facts and circumstances brought out by the plaintiff, raise a presumption that a ceremonial marriage was entered into between Sallie Cooper (Owens) and Daniel Owens. But he relies upon his contention that this presumption is not conclusive and is successfully rebutted by his separation from Sallie Cooper Owens, and his subsequent marriage to Rose Phillips.

The authorities seem to uniformly hold that the presumption of marriage arising from marital cohabitation

and repute is not conclusive, but is always subject to rebuttal. This rebuttal may be made by proof of facts showing that no marriage ever existed between the parties; or proof that the cohabitation from the beginning was illicit and not of a marital nature; or proof that at its commencement either party had a prior spouse living and undivorced; or proof that the parties to the cohabitation finally separated and one or both afterwards entered into a marriage with another. Those are some of the circumstances which if proven would dispell the presumption of marriage. Other conditions might be shown which would be equally effective. *Weatherford v. Weatherford*, 20 *Ala.* 548, 56 *Am. Dec.* 206; *Jenkins v. Jenkins*, 83 *Ga.* 283, 9 *S. E.* 541, 20 *Am. St. Rep.* 316; *Jones v. Jones*, 48 *Md.* 391, 30 *Am. Rep.* 466; *In re Sloan's Estate*, 50 *Wash.* 86, 96 *P.* 684, 17 *L. R. A.* (*N. S.*) 960; *Hynes v. McDermott*, 91 *N. Y.* 451, 43 *Am. Rep.* 677; *Com. v. Stump*, 53 *Pa.* 132, 91 *Am. Dec.* 198; *Farley v. Frost-Johnson Lumber Co.*, 133 *La.* 497, 63 *So.* 122, *L. R. A.* 1915A, 200, *Ann. Cas.* 1915C, 717; *Wallace's Case*, 49 *N. J. Eq.* 530, 531, 25 *A.* 260; *Taylor v. Taylor* (*Eng.*), 1 *Lee* 571, 5 *Eng. Ecc. Rep.* 454; *King v. Inhabitants of Twyning* (*Eng.*), 2 *B. & Ald.* 386.

There are a number of authorities which hold that where a man and woman who have cohabitated for many years and are reputed to be man and wife, ultimately separate and one of them marries another, the presumption that the marriage which is known to have taken place is not a bigamous one is greater than the presumption of marriage arising from cohabitation and repute. In other words, the law will not presume that the person who actually entered into a marriage contract committed a crime. *King v. Inhabitants of Twyning*, 2 *B. & Ald.* 386; *Jones v. Jones*, 48 *Md.* 391, 30 *Am. Rep.* 466.

In the case last cited the following statement is found:

"The reasoning upon which this decision rests is that in such a

case the presumption of a marriage arising from cohabitation and repute is met and overcome by the stronger presumption that a man will not incur the guilt of felony and the danger which attends it by marrying another woman during the life of one to whom he had previously been lawfully married."

The marriage of Daniel Owens to Rose Phillips subsequent to the time he cohabited with Sallie Cooper (Owens) was clearly established at the trial. The evidence tended to show that Sallie knew of this marriage. Rose Phillips testified that she knew Sallie and that Sallie had seen them together. She further testified that the plaintiff, Ella M. Bentley, knew where she and Daniel lived and had been to their house. Thus we have a situation in which Sallie Cooper (Owens), who had cohabited with Daniel Owens for a number of years and signed mortgages and other papers as his wife, apparently knew of his marriage to another woman after his relations with her had been discontinued, but made no objection thereto.

Just when Daniel Owens separated from Sallie Cooper (Owens) is uncertain, but he was married to Rose Phillips on June 6, 1938. From that time until the time of her death, which was January 6, 1939, Sallie Cooper (Owens) continued to live in the city of Wilmington, at the same address where she had last cohabited with Daniel Owens, without making any effort to obtain support from him or in any way protesting his marriage to Rose Phillips. There is no direct proof that Sallie knew that Daniel Owens was still in Wilmington or where he lived, but there was evidence that the plaintiff, Ella M. Bentley, who was the daughter of Sallie and lived with her, knew where he was living with Rose Phillips and had visited them.

We have not overlooked the case of *State v. Oaks*, 1 *Boyce* (24 *Del.*) 576, 76 *A.* 480, 481, in which the court held that the presumption of marriage arising from cohabitation and by persons holding themselves out to the public as man and wife was conclusive, and could not be disproved

or denied. The question there was one of non-support, the parties having actually entered into a marriage contract and lived together for twenty-eight years, and two children having been born to them. The following language which was used by the court in that case, shows clearly that it was only considering the question of non-support under the existing circumstances, and had no intention of deciding the legality of the marriage:

"It does not impress the court as being the proper time or tribunal for the determination of a question so grave and important as that of the existence or nonexistence of a prior legal marriage. The court here has before it but a single issue; that is, the liability of the defendant to contribute to the support of the prosecuting witness. The woman who here claims the aid and succor of this court has much more than established a *prima facie* case. She has shown 28 years of service rendered to this man in every way in which a wife serves her husband, and this in face of the fact that Francis L. Oaks had been informed within six months after the time that he married her that she had been lawfully married to Edwin Yerkes, and that the bonds of marriage with Yerkes were still existing. That was the time when the defendant was put on his guard. An action for the annulment of his marriage would have tested its legality, and either freed him from the unfortunate situation in which he found himself, or else his marriage would have been upheld, thereby putting the seal of legitimacy upon his children. But he resorted to no such remedy, but on the contrary lived, seemingly with entire content, with the woman whom he had married, and no word of testimony was offered at the hearing in this case that indicated that he was not happy and satisfied with the wife he had chosen, as no murmurs of discontent were heard until after the passing of 28 years and when domestic difficulties arose, growing out of derelictions that seemed traceable largely, if not entirely to the defendant."

The common-law principle charging a husband with all of the civil liabilities, including the support of his wife and payment of her burial charges is generally recognized in this country. But it must appear, either by direct proof or by proof showing cohabitation and other facts and circumstances, that the parties were married.

It is admitted in this case that the defendant cohabited with Sallie Cooper (Owens), and that there were other circumstances from which it might be presumed that they were married; but it is insisted that this presumption

has been rebutted by the evidence of their separation and defendant's marriage to Rose Phillips.

We agree with the contention of the defendant that the presumption of marriage arising from his cohabitation with Sallie Cooper (Owens), has been successfully rebutted by his later separation and marriage.

Let judgment be entered for the defendant for costs.