IN THE MATTER OF WILLARD H. PARSONS, DECEASED.

(*June* 3, 1948.)

PEARSON and LAYTON, J. J., sitting.

*Everett E. Borton* and *Howard E. Lynch* for appellants.

*Henry J. Ridgely* and *George M. Fisher* for appellee.

Superior Court for Kent County, No. 58, February Term, 1947.

LAYTON, Judge.

Willard H. Parsons died intestate in Kent County on September 18, 1945. On September 21st Laura Q. Parsons petitioned for the grant of Letters of Administration to her, alleging that she was his wife and the sole person entitled to his estate. Letters of Administration were granted ex parte in accordance with 3808, Sec. 10 of the Revised Code of Delaware 1935. Some 13 months subsequent to the grant of Letters and the qualification of the Administratrix pursuant thereto, certain persons filed a petition with the Register of Wills alleging that they were the only heirs at law of the deceased, that Laura Q. Parsons was not the wife of the deceased, therefore not qualified to act as Administratrix of his estate, and praying for the issuance of a rule to show cause why the Administratrix should not be removed. After full hearing the Register of Wills upheld the grant of Letters and petitioners have appealed.

In support of their petition to have the Administratrix removed because she was not the lawful wife of the deceased, appellants produced as witnesses four relatives of the deceased, and the husband of one of them. After a most careful examination of their testimony we find but one statement which has any direct bearing on the issue of marriage. A Mrs. Bullock testified that the deceased had once stated in response to a question whether he was married to Laura Q. Parsons, "H—, no." This remark, also confirmed by Mrs. Bullock's husband was not made in the presence of Mrs. Parsons. The admission of this testimony was objected to upon the ground that statements of a deceased denying marriage, not made in the presence of his wife, are

inadmissible. Although the question presented as to the admissibility of such testimony is interesting, we refrain from deciding the point because the law is sharply in conflict and our result would be the same in any event. Assuming it to be admissible, it is entitled to little weight for the reason that statements attributed to a deceased by one expecting to benefit therefrom, unless amply supported by other evidence, should be received with great caution and given but slight credence. *New York Trust Co. v. Riley*, 24 *Del. Ch.* 354, 16 A.2d 772.

The Administratrix, Laura Q. Parsons, testified that she was originally married to a man named Tilghman by whom she had three children, but was divorced from him in August, 1932. The final decree of divorce is before us. She further testified that in September, 1932, pursuant to a letter from deceased proposing marriage received by her in Virginia, where she was then living, she took a train for Wilmington, he joining her on the train at Dover, and upon arriving in Wilmington they took a street car to a minister's residence where they went through a formal ceremony of marriage in the presence of witnesses. She stated that two documents were produced by him after the ceremony, all present signed them, the minister retaining one and her husband the other. Also her husband gave her a ring at that time which she asserted was the same as the one on her finger at the time of the hearing. Corroboration of the ceremony, if not the date, is found in the testimony of Jones, who said that in his presence Administratrix showed a diamond ring to his (Jones') housekeeper and stated deceased gave it to her when they were married. Deceased was present and "smiled like he was pleased." This was some time in 1933. No record of the marriage exists. She produced no certificate and had forgotten the names of the minister who officiated and of the witnesses.

Thereafter, she gave evidence of returning to live with her husband on a small farm outside Dover, being held out by him as his wife in the community owning property with him as tenants by the entireties, transferring a portion thereof by deed (which she signed and acknowledged in accordance with our laws), and, in general, openly cohabiting with him as his wife until his death some 12 years later. Corroboration of these facts (excepting the marriage ceremony) was so decisive as to admit of no doubt.[1]

Upon cross examination, however, Administratrix became badly confused in some respects and appellants rely on the apparent admissions against interest therein (together with deceased's denial of the marriage already mentioned) as strong indication either that no ceremony of marriage was ever performed, or that it took place prior to her divorce from Tilghman. It appears that a relative of the deceased named Lloyd, died in Dover, and his funeral took place there on December 7, 1931. The Administratrix testified that she attended the funeral with the deceased. She later stated she had never lived with him prior to their marriage in September, 1932. Elsewhere, she admitted she had spent one night with deceased prior to the marriage, occupying separate rooms, but certain of the appellants testified that she, with the deceased, had visited Lloyd several times just before his death. At another point she stated she was married to deceased at the time when a relative called to inform them of Lloyd's death on December 4, 1931. In this connection Mr. Bullock, the relative in question, testified that Administratrix was at the home of deceased when he went there to notify deceased of Lloyd's funeral.

---

[1] Counsel stipulated for the record that "* * * since Sept. 1932 and up to the date of the death of the said W. H. P., Laura Q. Parsons and Willard H. Parsons opening cohabited as husband and wife, bought and sold real estate as husband and wife, openly treated each other as husband and wife and were generally reputed to be husband and wife in the community in which they lived."

The inference from these facts is that she was married to deceased prior to December 4, 1931, before her divorce from Tilghman became effective, or that she was living with him illicitly prior to their marriage. Further confusion developed relating to testimony by Administratrix that upon receiving the final copy of the divorce decree from her first husband, she returned to Virginia for about a year before she remarried. Under such facts her marriage to deceased could not have occurred until late 1933 instead of September, 1932, as she testified. Some clarification of this series of contradictions can be found in the testimony of a daughter of the Administratrix who testified that her mother spent the year 1931 with her in Exmoor, Virginia, that she was living in Virginia in December, 1931, but that in September, 1932, her mother left Virginia, was married and lived thereafter near Dover, and that she remembered living with her mother on the Pleasanton Farm for awhile. However, the daughter was but 8 years old at that time. In re-direct examination Administratrix declared she was not married to deceased at the time of the Lloyd funeral but had spent one night with the deceased before their marriage, during which time, presumably, she might have attended the Lloyd funeral.

It remains to decide, then, whether from these facts it could fairly and reasonably be determined that a valid ceremony of marriage took place between Administratrix and deceased subsequent to August, 1932. Administratrix never wavered in her testimony that she went through a ceremony of marriage with deceased. Her description of the event and the surrounding details is convincing. The episode concerning the showing of the ring to Jones' housekeeper affords circumstantial corroboration. A presumption of a ceremonial marriage arises from their open and notorious cohabitation as man and wife in their own community. *Owens v. Bently*, 1 *Terry* 512, 14 A.2d 391. Con-

ceding the comparative ease with which testimony as to an event of this sort might be fabricated, evidence of cohabitation has been repeatedly admitted in evidence in our Courts on the issue of marriage and there being but slight evidence to the contrary,[1] it is entitled to credit here. But petitioners also argue that the testimony establishes that the original cohabitation between Administratrix and deceased was illicit, and, such relationship once established is presumed to continue. *Fuller's Estate,* 250 *Pa.* 78, 95 A. 382. However, this is a presumption entitled to but slight weight. Concededly Administratrix admitted staying one night with the deceased which might have been about the time of the Lloyd funeral. Other evidence indicates the possibility that she may have spent a longer period, or periods, than one night. If we assume, arguendo, that Administratrix and the deceased cohabited illicitly prior to marriage, the slight presumption as to the continuance of that relationship is overcome by reasonably convincing proof of a subsequent, valid ceremony of marriage. In our judgment, the weight of the evidence justifies the conclusion that Administratrix went through a ceremony of marriage with the deceased at some time during their cohabitation together. If this ceremony were performed subsequent to August, 1932, the effective date of the divorce between Administratrix and Tilghman, it would result that Administratrix is the lawful wife of Willard H. Parsons, deceased.

Petitioners argue, however, that the ceremony of marriage must have taken place, if at all, prior to August, 1932, and probably just prior to the date of the Lloyd funeral in December, 1931. In support of this contention they point to the reasonably strong evidence of cohabitation at that time and also the admission by Administratrix during the

---

[1] In fact, the only evidence in derogation of the marriage was the purported denial by deceased of his marriage to Mr. and Mrs. Bullock.

cross examination that she was married to deceased when Bullock called at his home to notify him of the Lloyd funeral.

On this question both in direct and re-direct examination Administratrix testified clearly that the ceremony occurred in September, 1932. She remembered because it was grape cutting time, just after Labor Day. Being a farm woman of limited education, it would be natural to associate this event with some occurrence connected with farm labor. A careful examination of her testimony in cross examination reveals only one statement that the marriage occurred before her divorce from Tilghman. In re-direct examination Administratrix denied she was married at the time of the Lloyd funeral and her daughter's testimony lends some credence to the theory that although she might have stayed with deceased in Dover from time to time prior to marriage, there was no ceremony of marriage until September, 1932. The most persuasive evidence indicating that Administratrix was not married to deceased at the time of the Lloyd funeral, and therefore, not prior to the effective date of her divorce, comes from petitioners themselves.

Mrs. Eetsch said: "She (Administratrix) did not come to the house until the day of the funeral (the Lloyd funeral on December 7, 1931). She was not known as his wife. At the funeral she was asked if she was his wife and she said 'No' and was put in the room with the other people."

This testimony persuades the conclusion that Administratrix was not married to deceased in December, 1931, thus substantially destroying the remaining contention on the part of petitioners.

Conceding the absence of a certificate or other documentary proof of marriage in this case gives rise to suspicion as to whether there actually was a formal ceremony, yet if a ceremony were in fact performed in ac-

cordance with the laws of this state, the failure to obtain a license would not invalidate the marriage. *Wilmington Trust Co. v. Hendrixon,* 1 *W. W. Harr.* 303, 114 A. 215 (Del. Ct. in Banc). Administratrix testified that such a ceremony was performed before a minister of the Gospel and in the presence of the required number of witnesses. The possibility of the existence of a license may be surmised, for she described the production and signing of certain documents and we cannot absolutely assume that because no record of the marriage exists, our system of records is so perfect as to preclude the possibility of error in recording the issuance of a license.

Whether Administratrix married deceased prior to the effective date of her divorce from Tilghman in August, 1932, or whether, in fact, she ever went through a valid ceremony of marriage with him at any time will never be known with absolute certainty. As heretofore observed, she was an unsophisticated farm woman with a sixth grade education. The events about which she testified happened 13 years prior to her testimony in the proceeding below, an interval which might well tax the memory of the best trained mind. Nor is it surprising that this witness, when subjected to searching cross examination, should become confused as to the time of events many years before. In the main, however, her testimony carries the ring of truth. The inconsistencies, when analyzed, concern not so much the fact of a ceremonial marriage, as the date. We believe the date to have been reasonably well established as during September, 1932, which overcomes any presumption of a continuance of the prior illicit relationship inferable from the other evidence. We can only say that the decision of the Court below was based upon evidence from which it could have been reasonably and fairly deduced that Administratrix went through a ceremony of marriage with deceased just after Labor Day, 1932, and thereafter cohabited with him openly as his wife

until his death in 1945. And whether or not the Administratrix or the petitioners had the burden of proof in this case, our conclusion would be the same. The decision of the Register of Wills in and for Kent County sustaining his original grant of Letters of Administration to the Administratrix, Laura Q. Parsons, is accordingly affirmed.