SANDRA KAY BERDIKAS, a minor child, by her next friend Emma Sturgeon, Plaintiff, v. NICHOLAS BERDIKAS, Defendant.

(*March* 9, 1962).

LYNCH, J., sitting.

*Robert C. O'Hora* for Plaintiff.

No appearance for Defendant.

Superior Court for New Castle County, No. 1611, Civil Action, 1961.

LYNCH, Judge.

·At the hearing on plaintiff's petition, charging defendant with wilful desertion, it developed that after the parties to this case were wed in a religious ceremony in a Church Parsonage, the defendant excused himself to his bride and went to a nearby tap room to have some drinks with friends. The plaintiff was a minor; the defendant directed her to go to her home, where the wedding reception was to be held, and to wait there until he arrived. The defendant did not reach the bride's home for some considerable time and when he did, he and his bride quarrelled and words passed. It seems the defendant put on his coat and hat and left the bride's home and never returned. According to plaintiff the marriage was never consummated.

Plaintiff's proof met all the requirements for the granting of a decree *nisi* on the grounds of wilful desertion—if the Divorce Statute [13 *Del. C.* § 1522] is applicable. This Court has heretofore stated in *Thompson v. Thompson,* 8 *Terry* 252, 254, 90 *A.* 2d 484, 485 (1952) that "* * * the existence of the marriage relations is an essential element in a cause of action for divorce. * * *"

The question is thus presented—does a valid marriage exist where it appears there was no consummation of the marriage, following the ceremonial wedding?

It is stated in 55 *C.J.S. Marriage* § 22, p. 849,[1] that— "It has been laid down broadly that a marriage must be consummated, * * *."

*Mills v. Mills,* 186 *Misc.* 885, 62 *N. Y. S.* 2d 344, is the case cited in support of this statement. Other cases can be

---

[1]Compare 38 C. J. Marriage § 58.

found where like language appears, *Graham v. Graham,* 130 *Colo.* 225, 274 *P.* 2d 605 and *Brown v. State,* 208 *Ga.* 304, 66 *S. E.* 2d 745. These and the bulk of some other cases in which similar language appears generally involve a common law marriage and in a state where the requirement of showing a ceremonial marriage is not a necessity. Such cases, therefore, are not helpful.

■ In this state it has long been established that there can be no valid marriage unless there is compliance with the Statute; in short, this must be a ceremonial wedding. 13 *Del. Code,* 1953, *Ch.* 1, § 106. *Doe ex dem. Jackson v. Collins,* 2 *Houst.* 128. In that case it was said (2 *Houst.* 133) that marriage "can only be contracted by some positive act, or ceremony, or solemnization recognized by the law of the place where it is entered into."

This Court ruled in *Wilmington Trust Co. v. Hendrixson,* 1 *W. W. Harr.* 303, 320, 114 *A.* 215, 222 (1921):

"* * * it is manifest from the history of marriage legislation in this state that a secret, clandestine or nonceremonial marriage was never intended to be valid. The law has at no time contemplated that it should be recognized. * * *

"Our conclusion is that * * *, a fair construction of our own statutes makes a secret and nonceremonial marriage illegal and void. And we base our conclusion on the apparent meaning and object of legislation on the subject, as well as upon the manifest policy of the state. To make a good and legal marriage something more is required than cohabitation and repute. * * *"

This Court said in *Anonymous v. Anonymous,* 7 *Terry* 458, 85 *A.* 2d 706, 716:

"In Delaware, marriage is more than a contractual relationship, subject to the ordinary rules of contract law; it is a status, defined and established by law, * * *."

See also *In re Parsons*, 5 *Terry* 406, 59 *A*. 2d 709 (1948) and *Owens v. Bentley*, 1 *Terry* 512, 14 *A*. 2d 391 (1940).

 I referred to "common law marriages" because it so clearly appears from such cases that these are not valid in this state and because Courts so frequently state in cases involving them that "cohabitation" or "consummation" is a necessary element of such marriages. Here I am dealing with a ceremonial marriage, performed in accordance with our statute, but in which it appears there has been no consummation of the marriage.

An examination of the Digests bring to light many cases in which the Courts have, in instances of ceremonial marriages, held that consummation of such a marriage is not a necessary element to make such marriage valid. The Court of Appeals of Kentucky so held in *Dumaresly v. Fishley*, 3 *A. K. Marsh* 368, 10 *Ky*. 369, 372 (1820). The Supreme Court of New York held to the same effect in *Jackson ex dem. Dies, et ux. v. Winne*, 7 *Wendell* 47, 50 (1831). The question was considered by the Supreme Court of Pennsylvania in *Barnett et al. v. Kimmell*, 35 *Pa*. 13 (1859) and in which case the Court said (page 19 *et seq.*):

"The only fact proved to invalidate the marriage was, that since it took place he has not lived with her. This clearly does not render it null and void *ab initio*, or a state of divorce would become the rule instead of the exception.

&ast; &ast; &ast; &ast; &ast; &ast;

"The contract of marriage differs from all others, in having a specific remedy provided by positive statute, in which its validity or invalidity may be finally determined between the parties. This is necessary for the peace and comfort of society, as well as for the safety and happiness of the helpless progeny."

A like result was reached in the fairly recent case of *In re Zanfino's Estate*, 375 *Pa.* 501, 100 *A.* 2d 60 (1953). The Alabama Court in *Potier & McCoy v. Barclay and Husband*, 15 *Ala.* 439 (1849) decided that consummation was not necessary to render a ceremonial marriage valid.

The Supreme Judicial Court of Massachusetts in *Franklin v. Franklin*, 154 *Mass.* 515, 28 *N. E.* 681, 13 *L. R. A.* 843 (1891) said of a marriage where there had been no cohabitation following the ceremony, (28 *N. E.* at 682):

"The libelant and libelee became husband and wife by virtue of a lawful marriage. The agreement that they would not live together had no effect upon the marriage contract entered into in regular form in the presence of a magistrate or minister authorized to solemnize marriages. It is against the policy of the law that the validity of a contract of marriage or its effect upon the status of the parties should be in any way affected by the preliminary or collateral agreements. * * * The consummation of a marriage by coition is not necessary to its validity. The status of the parties is fixed in law when the marriage contract is entered into in the manner prescribed by the statutes in relation to the solemnization of marriages. * * *"

The Supreme Court of Maine ruled on the question in *Brooks-Bischoffberger vs. Bischoffberger*, 129 *Me.* 52, 149 *A.* 606, 607 (1930), and upheld the validity of the marriage, citing *Franklin v. Franklin, supra.* This same result was reached in *Mitchell v. Mitchell*, 136 *Me.* 406, 11 *A.* 2d 898, in which the *Bischoffberger* case was cited. The Mississippi Supreme Court upheld a ceremonial marriage which was not followed by cohabitation or consummation, in *Hunt v. Hunt*, 172 *Miss.* 732, 161 *So.* 119 (1935). The Texas Court considered the question in *Shepard v. Shepard, Tex. Civ. App.,* 139 *S. W.* 2d 195 (1940) and held (l.c. 197):

"It is immaterial that the parties did not live together as man and wife after the marriage ceremony was completed. The doctrine is settled in this state that the marital status is definitely fixed, without more ado, when the marriage is solemnized in the manner prescribed by law. * * *"

In the light of the aforecited cases and the reasoning found in the opinions, I conclude and hold that where the parties have been wed in compliance with the requirements of the statute, 13 *Del. Code*, 1953, Ch. 1, a valid marriage is effected and no consummation of the marriage, as by coition is necessary. Since a valid marriage relation was proved here and the evidence demonstrated the desertion, the Prothonotary is directed to enter a decree *nisi*, effective as of the date of hearing.