T.C. Summary Opinion 2007-36

UNITED STATES TAX COURT

LOIS LIPTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12588-04S.          Filed March 7, 2007.

Lois Lipton, pro se.

<u>Kathleen Raup</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This is a case arising under

section 6015(f), as amended,[1] and 7463 of the Internal Revenue

---

[1] The Tax Relief and Health Care Act of 2006, Pub. L. 109-432, 120 Stat. 2922, amended sec. 6015(e)(1) to provide that this Court may review the Commissioner's denial of relief under sec. 6015(f) in cases where no deficiency has been asserted.  The amendment applies "with respect to liability for taxes arising or remaining unpaid on or after the date of the enactment" of the Act, December 20, 2006.  See Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. C. sec. 408, 120 Stat. 3062.  As of the date of enactment, there remained an unpaid liability for tax
(continued...)

Code as in effect at the time the petition was filed. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code of 1986 as amended. The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

This case arises from petitioner's election to seek relief from joint and several liability for Federal income tax for the taxable year 2001 under section 6015(f). Respondent determined that petitioner was not entitled to such relief. The sole issue before this Court is whether petitioner is entitled to relief under section 6015(f) for 2001 for an underpayment of tax shown on the return.

                              Background

Some of the facts are stipulated. The stipulated facts and the exhibits received into evidence are incorporated herein by reference. At the time that the petition was filed, petitioner resided in Wilmington, Delaware.

Petitioner and Ebrehem Khalil Aly (Mr. Khalil Aly), an Egyptian national, met over the Internet sometime in 1996 and began a romantic relationship soon thereafter that spanned the next 5 years. Mr. Khalil Aly was married with children and living in Egypt at the time that he began an "online"

---

[1](...continued)
for the year 2001. Therefore, this Court has jurisdiction to decide this case.

relationship with petitioner.  The relationship culminated in early 2001 when Mr. Khalil Aly traveled to United States.  Shortly after Mr. Khalil Aly's arrival, petitioner and Mr. Khalil Aly were married by a clerk of the court in Florida sometime in the late spring of 2001.

Petitioner and Mr. Khalil Aly left Florida to reside permanently in Delaware, where they both worked at Delcare Management, LLC (Delcare), a physical therapy center.  Prior to his arrival in the United States, Mr. Khalil Aly represented to petitioner that he was a physician in Egypt.  At Delcare, Mr. Khalil Aly assisted with therapy services by preparing ice and heat packs and paraffin wax treatments, while petitioner worked as the center's office manager.  At or about the time Mr. Khalil Aly started to receive paychecks from Delcare, he and petitioner went to their local Internal Revenue Service (IRS) office in Wilmington, Delaware.  The couple asked personnel at the IRS office whether Mr. Khalil Aly would have to pay taxes on his earnings in the United States, and whether he could claim dependency exemptions for his children.  The IRS personnel explained that, based on the information the parties provided at that time, Mr. Khalil Aly would have to pay taxes on his earnings in the United States, and he might be able to claim his children as dependents.  The IRS personnel provided Mr. Khalil Aly with

the forms necessary to request Individual Taxpayer Identification Numbers (ITINs) for his children.

Shortly after the visit to the IRS office, Mr. Khalil Aly submitted tax forms to Delcare's payroll department. These forms indicated that he wished to claim exemptions for six children.

Mr. Khalil Aly submitted ITIN requests for his six children in the late spring of 2001. Mr. Khalil Aly received at least two replies to these requests. The first response occurred approximately 1 month after his initial submissions and contained a set of supplemental questions pertaining to his children's residency. Mr. Khalil Aly replied to this request. A second reply followed shortly thereafter, again requesting additional information with respect to the children's residency. Correspondence of this nature continued for 12 months following Mr. Khalil Aly's initial request.

Petitioner thereafter enlisted the assistance of her local Congressman to procure the ITINs for Mr. Khalil Aly's children. The Congressman's staff, in turn, enlisted the assistance of the Commissioner's Taxpayer Advocate Service, which informed Mr. Khalil Aly in May 2002, that ITINs could not be issued for his children because as of that date, he had not provided documentation showing that his children satisfied the residency requirement. Thereafter, Mr. Khalil Aly neither provided the IRS

with information proving the residency of his children, nor did he change the number of exemptions he had reported to Delcare for withholding purposes.

On June 26, 2002, petitioner and Mr. Khalil Aly filed a 2001 Form 1040, U.S. Individual Income Tax Return. On their 2001 return, they elected the filing status of "married filing jointly." Petitioner and Mr. Khalil Aly reported tax due and owing of $10,808 on their 2001 return; however, they failed to make any payment with respect to this tax due. On December 10, 2002, petitioner and Mr. Khalil Aly submitted an offer-in-compromise with respect to the unpaid tax for 2001. Respondent rejected this offer-in-compromise on January 23, 2003, and the liability stemming from 2001 remains unpaid.

On April 1, 2003, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief, with respect to taxable years 2001 and 2002. On the same date, respondent received petitioner's Form 12510, Questionnaire for Requesting Spouse. Both Forms 8857 and 12510 were signed and dated by petitioner on March 6, 2003, and, with respect to the 2002 taxable year, were submitted before the 2002 Form 1040 was filed.[2]

_____

[2] Petitioner's request for innocent spouse relief with respect to taxable year 2002 was procedurally improper. Sec. 6015(b) permits a request for relief from joint and several liability only when "a joint return has been made for a taxable year", and where that return shows "an understatement of tax". Sec. 6015(b)(1)(A) and (B). In this case, petitioner requested relief for taxable year 2002 1 month before the 2002 return was

(continued...)

On the Form 8857 submitted by petitioner, she stated that she separated from Mr. Khalil Aly in January 2003, that she and her spouse held a joint bank account, that she wrote checks and balanced the check book, that she reviewed their 2001 return before signing it, that she knew that there was a balance due with respect to the 2001 taxable year, that she was in financial trouble; and that there was no abuse in the marriage. She also stated that pursuant to a court order in Egypt, Mr. Khalil Aly was required to send all of his earnings to his ex-wife and children in Egypt and that the couple directed Mr. Khalil Aly's employer to withhold taxes based on six exemptions in reliance on information provided to them by IRS employees. Periodically, Mr. Khalil Aly returned to Egypt for extended visits lasting several months. Petitioner was informed by agents of the Federal Bureau of Investigations (FBI) in January 2003 that Mr. Khalil Aly was still married to his wife in Egypt. Petitioner thereafter began annulment proceedings.

On September 22, 2003, respondent sent petitioner a letter stating that respondent had made a preliminary determination that petitioner was not eligible for relief under section 6015(f) for

_____

[2](...continued)
filed. Moreover, the 2002 return indicated that a refund was owed. As petitioner's request for relief for the 2002 taxable year did not comply with the procedural requirements of sec. 6015, respondent addressed only the 2001 taxable year in the Final Notice of Determination issued to petitioner on July 2, 2004. Accordingly, the taxable year 2002 is not at issue in this case.

the 2001 taxable year.  On October 8, 2003, petitioner sent respondent a Statement of Disagreement with respondent's preliminary determination as set forth in the letter dated September 22, 2003.  On December 15, 2003, respondent's Appeals officer sent petitioner a letter advising her that he had received her Statement of Disagreement, which would be considered her appeal.  On January 24, 2004, the Appeals officer sent petitioner a Notice of Determination Concerning Your Request for Relief from Joint and Several Liability under Section 6015 and Summary/Recommendation determining that petitioner was not entitled to relief under section 6015 for the 2001 taxable year.

On May 14, 2004, respondent's Appeals officer sent petitioner a letter advising her that the earlier determination made by its Examination Division would stand.  The letter requested a response from petitioner within 30 days.  Petitioner responded by letter dated May 23, 2004, in which she reiterated that she should not be held responsible for the liability stemming from the 2001 taxable year, as that liability resulted from representations that both the IRS personnel and Mr. Khalil Aly made to her that ITINs would be issued for Mr. Khalil Aly's children for the taxable years at issue.

## Discussion

As a general rule, spouses making joint Federal income tax returns are jointly and severally liable for all taxes shown on

the return or found to be owing. Sec. 6013(d)(3). In certain situations, however, a joint return filer can avoid such joint and several liability by qualifying for relief therefrom under section 6015.

Relief Available Under Section 6015(f)

Section 6015 provides relief from joint liability by providing the taxpayer with three avenues for obtaining relief: (1) Section 6015(b) provides full or apportioned relief with respect to understatements of tax attributable to certain erroneous items on the return; (2) section 6015(c) provides relief for a portion of an understatement of tax for taxpayers who are separated or divorced; and (3) section 6015(f) (potentially the broadest of the three avenues and the avenue pertinent to the issue in this case) confers upon the Secretary discretion to grant equitable relief for taxpayers who otherwise do not qualify for relief under section 6015(b) or (c). As there is no understatement of tax at issue, neither section 6015(b) nor (c) applies. Therefore, we must consider the equitable relief provisions of section 6015(f).

Section 6015(f), as amended, provides, in part, that a taxpayer may be relieved from joint and several liability if it is determined that, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for the unpaid tax, and relief is not available under section 6015(b)

or (c).  To prevail, petitioner must prove both that she is entitled to relief under section 6015 and that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  Jonson v. Commissioner, 118 T.C. 106, 125 (2002), affd. 353 F.3d 1181 (10th Cir. 2003); Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002); Butler v. Commissioner, 114 T.C. 276, 291-292 (2000).  For the following reasons, we conclude that petitioner is not entitled to relief under section 6015 because she was not eligible to file a joint return for taxable year 2001.

In order to be eligible for relief under section 6015, petitioner must have made a joint return for the taxable year at issue.  See sec. 6015(a)(1), (b)(1)(A).  Section 6013 defines a joint return as that made by a "husband and wife".  Sec. 6013(a). In the administration of the Federal income tax laws, the marital status of individuals is determined under State law where the taxpayer resides.  Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967); Rev. Rul. 58-66, 1958-1 C.B. 60.  Accordingly, we now consider petitioner and Mr. Khalil Aly's marital status under Delaware law.

During at least the 5 years prior to his arrival in the United States in 2001, Mr. Khalil Aly was married with children in Egypt.  During this period, he did not hide his marital status

from petitioner.  When Mr. Khalil Aly arrived in Florida to meet petitioner in early 2001, he announced to her that although he was no longer married to his wife in Egypt, "however" an Egyptian court had issued an order that he remit all of the wages that he might earn in the United States to his former wife and their six children.  Petitioner testified that shortly after Mr. Khalil Aly arrived in the United States, she and he were married by a clerk of a court somewhere in Florida.  Petitioner did not testify about any of the details surrounding the marriage ceremony or provide any documentation proving that a marriage ceremony took place.

After their initial meeting and purported marriage ceremony in Florida, petitioner and Mr. Khalil Aly moved to Delaware. They lived together there from approximately April 2001 to January 2003.  During the 21 months that they resided in Delaware, petitioner testified that Mr. Khalil Aly made approximately three extended trips back to Egypt.  He was gone for approximately 2 months during each trip.  Near the time of each of these trips, Mr. Khalil Aly would offer petitioner an elaborate reason for his travel.  These reasons included a life-saving operation for one of his daughters and training that he was required to undergo to become the next "Egyptian Medical Ambassador to the United States."  According to petitioner, on each trip made to Egypt Mr. Khalil Aly would take with him large

sums of cash including all of the wages he earned while working at Delcare, plus additional money that petitioner gave him.

Petitioner testified that it was during the last of Mr. Khalil Aly's extended trips to Egypt that she received a visit from agents of the FBI. The FBI agents informed petitioner that Mr. Khalil Aly was perpetrating a ruse: that he was, and had always been, married to his wife in Egypt, that he came to the United States for the primary purpose of marrying a citizen here, and that he was not in line to become the next "Egyptian Medical Ambassador to the United States." The FBI strongly advised petitioner to seek an annulment from the Family Court in Delaware so that Mr. Khalil Aly (who the FBI perceived as a threat to national security) could not "use" his "marriage" to a U.S. citizen to gain reentry into the United States.

On the basis of the foregoing facts, and the suspect circumstances under which Mr. Khalil Aly came to the United States (including the brevity of his and petitioner's engagement period (apparently days, at most)), we conclude that Mr. Khalil Aly was, in fact, married at the time that a marriage ceremony was conducted in Florida, assuming that such a ceremony actually occurred. Under Florida law, a person who has a living spouse and marries another person is guilty of a felony of the third degree. Fla. Stat. Ann. sec. 826.01 (West 2006). Therefore, the marriage entered into by petitioner and Mr. Khalil Aly in Florida

was void ab initio. <u>Groover v. Groover</u>, 383 So. 2d 280, 283 (Fla. Dist. Ct. App. 1980). Accordingly, since there was no valid marriage, under ordinary circumstances, an annulment would be unnecessary. <u>Id.</u>

We believe that petitioner sought an annulment in the Family Court in Delaware based equally on the FBI's revelation to her of Mr. Khalil Aly's marital status and motive for remaining "married" to a U.S. citizen, and her desire to prevent him from returning to their home. We find that petitioner was very emotionally distressed and confused by the circumstances that transpired during and after her visit from the FBI. We believe that petitioner honestly thought that she had to obtain an annulment although we are uncertain as to whether there was a requirement for her to do so under these circumstances. While we acknowledge that it was improper for her to seek an annulment after she was told that a valid marriage in Florida never occurred, we do not consider petitioner's obtaining the annulment as having any legal effect with respect to the issue of petitioner's correct filing status for taxable year 2001.

Moreover, although we acknowledge that a bigamous marriage is voidable in Delaware, in this case the marriage was not entered into in Delaware but Florida, where such marriages subject the married party to a felony charge and are therefore void. Del. Code Ann. tit. 13, sec. 101 (1999); Fla. Stat. Ann.

sec. 826.01 (West 2006). While we believe that the State of Florida had no reason to suspect that the Florida marriage was void ab initio, we do not find that the subsequent annulment gave validity to either the marriage entered into in Florida or the cohabitation of petitioner and Mr. Khalil Aly in Delaware. A marriage void ab initio in the State where contracted is also void ab initio in another jurisdiction. Cf. Loughran v. Loughran, 292 U.S. 216, 223 (1934) (a general rule of conflict of laws that a marriage, which is valid under the law of the place where it is contracted, is recognized as valid everywhere). As a final point on the inconsequential effect of the annulment, we conclude that the Delaware annulment did not validate any common law arrangement that would permit petitioner to file as married, as neither Florida nor Delaware recognizes common law marriage. Del. Code Ann. tit. 13, sec. 126 (1999); Fla. Stat. Ann. sec. 741.241 (West 2005).

In Delaware, the presumption of marriage arising from marital cohabitation is not conclusive but rather subject to rebuttal, which may be made by proof of facts showing that no marriage ever existed between the parties, or proof that at its commencement either party had a prior spouse living and undivorced. Owens v. Bentley, 14 A.2d 391 (Del. 1940). Here, we are convinced that the facts presented in this case are

conclusive that there was never a valid marriage between petitioner and Mr. Khalil Aly.

Accordingly, we conclude that petitioner is not entitled to relief under section 6015(f) because Mr. Khalil Aly was still married at the time that their ceremony in Florida purportedly occurred, making any union between him and petitioner meretricious from its inception. Moreover, a joint return could not be filed by petitioner and Mr. Khalil Aly under these facts as Mr. Khalil Aly's previous marriage had not been legally dissolved. Chap v. Commissioner, T.C. Memo. 1964-26. The fact that petitioner and Mr. Khalil Aly resided together in Delaware for 21 months is irrelevant, as there is no State that recognizes a bigamous common law marriage. Ochs v. Commissioner, T.C. Memo. 1986-595. Since petitioner could not be married to Mr. Khalil Aly, petitioner is not entitled to joint filing status for the 2001 taxable year.

Petitioner's Liability for Taxable Year 2001

Petitioner's correct filing status for the taxable year 2001 should be "single." Petitioner's income tax liability for 2001 should be calculated using the filing status "single."[3]

---

[3] Exhibit 13 in this case is a copy of petitioner's amended tax return with the filing status single for year 2001 that she submitted to respondent sometime before the trial. We are unsure as to whether respondent has accepted this return. As a result of this opinion, respondent should accept the amended return as

(continued...)

With respect to taxable year 2001, petitioner has only provided, as an attachment to the joint tax return, a copy of her Form W-2, Wage and Tax Statement, from Delcare. The Court is not in possession of sufficient information from which petitioner's liability for 2001 may be decided.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.

---

[3](...continued)
filed. In the alternative, petitioner may be entitled to file a return for the taxable year at issue with the filing status of "single."